Bob **SOROKOLIT, M.D.,** Petitioner,

v.

Janice S. **RHODES,** Respondent.

No. D–3639.

Supreme Court of Texas.

Argued Oct. 13, 1993.

Decided April 20, 1994.

Rehearing Overruled June 22, 1994.

---

Daniel A. Foster, Richard U. Simon, Denise J. Collins, Fort Worth, for petitioner.

Alfred W. Ellis, Dallas, for respondent.

HIGHTOWER, Justice, delivered the opinion of the Court, in which PHILLIPS, C.J., and HECHT, DOGGETT, GAMMAGE, ENOCH and SPECTOR, JJ., join.

This case requires that we determine whether section 12.01(a) of the Medical Liability and Insurance Improvement Act[1] precludes an action for knowing misrepresentation or breach of an express warranty under the Deceptive Trade Practices Act (DTPA).[2] Janice Rhodes ("Rhodes") sued Bob Sorokolit, M.D. ("Dr. Sorokolit") for medical malpractice, breach of implied and express warranties, and knowing misrepresentation. Rhodes subsequently dropped all allegations of negligence and proceeded solely on the warranty and misrepresentation claims under the DTPA. Dr. Sorokolit filed special exceptions, arguing that Rhodes' DTPA claims are precluded under section 12.01(a). The trial court sustained the special exceptions and dismissed the case. The court of appeals reversed in part and remanded. 846 S.W.2d 618. For the reasons explained herein, we affirm the judgment of the court of appeals.

## I.

■ For the purpose of reviewing the dismissal, because it is based on special exceptions, we accept as true all material factual allegations and all factual statements reasonably inferred from the allegations set forth in Rhodes' pleadings. *See, e.g., City of Austin v. Houston Lighting & Power Co.,* 844

S.W.2d 773, 783 (Tex.App.—Dallas 1992, writ denied); *Fidelity & Casualty Co. v. Shubert,* 646 S.W.2d 270, 277–78 (Tex.App.—Tyler 1983, writ ref'd n.r.e.); *Armendariz v. Bill Sears Supermarket No. 1,* 562 S.W.2d 529, 530 (Tex.Civ.App.—El Paso 1978, writ ref'd n.r.e.). When Rhodes first saw Dr. Sorokolit for a proposed breast augmentation surgery, he guaranteed and warranted the results of the surgery. Dr. Sorokolit instructed Rhodes and her husband to select a picture of a nude model from a magazine, promising that, following surgery, her breasts would look just like those in the picture she selected. The result was not as guaranteed. Rhodes sued Dr. Sorokolit for medical malpractice, breach of implied and express warranties under the DTPA, and knowing misrepresentation under the DTPA, but later dropped the malpractice claims. In her DTPA allegations, Rhodes contends that Dr. Sorokolit's conduct amounted to false, misleading, and deceptive acts and practices for the following reasons:

1. [Dr. Sorokolit] represented to [Rhodes] that his services had characteristics, uses and benefits which [they] did not have;

2. [Dr. Sorokolit] represented to [Rhodes] that his services were of a particular standard, quality and grade when they were another;

3. [Dr. Sorokolit] represented to [Rhodes] that his warranty involved rights which he did not have or involve; [and]

4. [Dr. Sorokolit] breached his express and implied warranty to perform his services in a good and workmanlike manner.

---

**1.** Section 12.01(a) provides:

> Notwithstanding any other law, no provisions of Sections 17.41–17.63, Business & Commerce Code, shall apply to physicians or health care providers as defined in Section 1.03(3) of this Act, with respect to claims for damages for personal injury or death resulting, or alleged to have resulted, from negligence on the part of any physician or health care provider.

Tex.Rev.Civ.Stat Ann art. 4590i, § 12.01(a) (Vernon Supp.1994).

**2.** The DTPA outlines a nonexclusive list of acts that are false, misleading, or deceptive under the statute. Tex.Bus. & Com.Code Ann. § 17.46(b)

(Vernon Supp.1994). A consumer may maintain a DTPA action if any of the following constitute a producing cause of actual damages:

> (1) the use or employment by any person of a false, misleading, or deceptive act or practice that is specifically enumerated in a subdivision of Subsection (b) of Section 17.46 of this subchapter;
> (2) breach of an express or implied warranty;
> (3) any unconscionable action or course of action by any person; or
> (4) [certain violations of the] Texas Insurance Code [and of] regulations issued by the State Board of Insurance....

*Id.* § 17.50(a) (Vernon 1987).

Finally, Rhodes alleges that Dr. Sorokolit knowingly committed the described acts and practices. Sustaining Dr. Sorokolit's special exceptions, the trial court ruled that a physician cannot be sued under the DTPA for conduct arising from the provision of professional medical services. The court of appeals reversed in part and remanded, holding that section 12.01(a) bars DTPA claims for breach of implied warranty but that section 12.01(a) does not bar DTPA claims based on knowing misrepresentation or breach of express warranty.

## II.

In his sole point of error, Dr. Sorokolit argues that section 12.01(a) of the Medical Liability and Insurance Improvement Act precludes an action for knowing misrepresentation or breach of an express warranty under the DTPA. We disagree.

 The goal of statutory construction is to give effect to the intent of the legislature. *Harris County Dist. Attorney's Office v. J.T.S.*, 807 S.W.2d 572, 574 (Tex.1991). If language in a statute is unambiguous, this court must seek the intent of the legislature as found in the plain and common meaning of the words and terms used. *Monsanto Co. v. Cornerstones Municipal Util. Dist.*, 865 S.W.2d 937, 939 (Tex.1993); *Moreno v. Ster-*

*ling Drug, Inc.*, 787 S.W.2d 348, 352 (Tex. 1990); *RepublicBank Dallas, N.A. v. Interkal, Inc.*, 691 S.W.2d 605, 607 (Tex.1985).[3] In applying the plain and common meaning of the language in a statute, courts may not by implication enlarge the meaning of any word in the statute beyond its ordinary meaning; such implication is inappropriate when legislative intent may be gathered from a reasonable interpretation of the statute as it is written. *Monsanto*, 865 S.W.2d at 939; *Commonwealth of Mass. v. United N. & S. Dev. Co.*, 140 Tex. 417, 168 S.W.2d 226, 229 (1942); *Sexton v. Mt. Olivet Cemetery Ass'n*, 720 S.W.2d 129, 138 (Tex.App.—Austin 1986, writ ref'd n.r.e.).

The language of section 12.01(a) is clear, unambiguous, and, when construed as written, not devoid of meaning. Section 12.01(a) states that there can be no DTPA claim against a physician or health care provider for damages for personal injury or death if the damages result, or are alleged to result, from the physician's negligence. Because the legislature has not defined "negligence" as it is used in section 12.01(a), we apply its common law meaning, *see* Tex.Rev.Civ.Stat. Ann. art. 4590i, § 1.03(b) (Vernon Supp.1994) (requiring that any legal term not defined in the statute be given its common law mean-

---

**3.** Dr. Sorokolit argues against a plain construction of section 12.01(a), suggesting that, even though the legislature used the term "negligence," it meant to exclude all DTPA claims against physicians and health care providers—not just those based on negligence. Although the legislative history provides some support for this view, *see Medical Liability and Insurance Improvement Act: Debate on Tex.H.B. 1048 on the Floor of the House*, 65th Leg., R.S. 31 (March 22, 1977) (statement of Representative Uher) (transcript available through the Office of the House Committee Coordinator) (arguing that physicians are exempted from the DTPA), we note that it also contains contrary suggestions. *See Medical Liability and Insurance Improvement Act: Debate on Tex.H.B. 1048 on the Floor of the Senate*, 65th Leg., R.S. (April 18, 1977) (comments of Senators Schwartz and Adams) (tapes available through the Senate Staff Services Office) (stressing that the statute is only meant to help physicians obtain insurance for medical negligence— that is, a physician's failure to reasonably exercise the degree of skill required—and does not preclude a cause of action for breach of warranty). However, in section 1.02 of the Medical Liability and Insurance Improvement Act, the

legislature as a whole expressed its concern about "the number of *health care liability claims*" and their effect on malpractice insurance and the delivery of health care. Tex.Rev.Civ. Stat.Ann. art. 4590i, § 1.02 (Vernon Supp.1994) (emphasis added). The legislature defined "health care liability claim" as

> a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care or health care or safety which proximately results in injury to or death of the patient, whether the patient's claim or cause of action sounds in tort or contract.

*Id.* § 1.03(a)(4). The legislature's expressed intent to regulate claims of medical malpractice— that is, claims of departures from accepted standards of medical care or safety—reinforces our conclusion that section 12.01(a) should be construed literally to apply to claims resulting from, or alleged to result from, negligence. Because Rhodes presents a claim in which departure from the accepted standard of medical care is not at issue, she does not present a health care liability claim within the scope of the statute.

ing); *Monsanto,* 865 S.W.2d at 939–940 (using the common law to determine the ordinary meaning of an undefined term), treating it as a breach of the accepted standard of medical care that proximately causes damages. *See, e.g., Peterson v. Shields,* 652 S.W.2d 929, 930 (Tex.1983); *Hood v. Phillips,* 554 S.W.2d 160, 164–66 (Tex.1977); *Chapman v. Wilson,* 826 S.W.2d 214, 219 (Tex. App.—Austin 1992, writ denied). Although the DTPA does not create a cause of action for negligence, *see, e.g.,* TEX.BUS. & COM.CODE ANN. § 17.50(a) (Vernon 1987) (only requiring proof that an act is a producing cause rather than a proximate cause of damages); Richard M. Alderman, *The Business of Medicine—Health Care Providers, Physicians, and the Deceptive Trade Practices Act,* 26 HOUS.L.REV. 109, 141 (1989) ("Theoretically, a DTPA action should never be one 'resulting from negligence.' "); DAVID F. BRAGG ET AL., TEXAS CONSUMER LITIGATION § 2.02, at n. 90 (2d ed. 1983) (stating that claims under the DTPA are not based on negligence), plaintiffs at times attempt to bring what might otherwise be negligence claims as DTPA suits. *See, e.g.,* John T. Montford et al., *1989 Texas DTPA Reform: Closing the DTPA Loophole in the 1987 Tort Reform Laws and the Ongoing Quest for Fairer DTPA Laws,* 21 ST. MARY'S L.J. 525 (1990). Because section 12.01(a) operates to bar characterization of medical negligence claims against physicians and health care providers as DTPA claims, we conclude that section 12.01(a) is not meaningless as written. Consequently, it is our duty to construe the statute as written by the legislature. *Government Personnel Mut. Life Ins. Co. v. Wear,* 151 Tex. 454, 251 S.W.2d 525, 529 (1952). If the legislature had intended otherwise, it could have expressed its intent in plain and specific language. *Id.* at 528–529.[4] Accordingly, we conclude that section 12.01(a) only precludes a DTPA suit against a physician for negli-

gence—that is, a suit founded on a breach of the accepted standard of medical care.

## III.

■ There can be no DTPA claim against a physician for damages for personal injury or death if the damages result, or are alleged to result, from the physician's negligence; however, if the alleged DTPA claim is not based on the physician's breach of the accepted standard of medical care, section 12.01(a) does not preclude suit for violation of the DTPA. Thus, the underlying nature of the claim determines whether section 12.01(a) prevents suit for violation of the DTPA. Claims that a physician or health care provider was negligent may not be recast as DTPA actions to avoid the standards set forth in the Medical Liability and Insurance Improvement Act.

Rhodes does not allege that Dr. Sorokolit deviated from the accepted standard of care in performing the surgery, nor is it evident that her DTPA suit for knowing misrepresentation and breach of express warranty is merely the recharacterization of a negligence suit. Her claim is that Dr. Sorokolit guaranteed the results of his surgery and that the doctor knowingly breached his express warranty of a particular result and knowingly misrepresented his skills and the results he could achieve. The DTPA defines "knowingly" as meaning "actual awareness of the falsity, deception, or unfairness of the act or practice giving rise to the consumer's claim or . . . actual awareness of the act or practice constituting the breach of warranty. . . ." TEX.BUS. & COM.CODE ANN. § 17.45(9) (Vernon 1987). Neither DTPA claim involves negligence—neither requires a determination of whether a physician failed to meet the standard of medical care; each claim, by its nature, concerns intentional deception and

---

4. Furthermore, we note that this court of appeals is not the first to conclude that section 12.01(a) should be given its plain meaning. *See, e.g., Chapman v. Wilson,* 826 S.W.2d 214, 219 (Tex. App.—Austin 1992, writ denied). Commentators generally agree that section 12.01(a) bars DTPA suits against physicians and health care providers only if the cause of action is based on negligence. *See, e.g.,* Richard M. Alderman, *The Business of Medicine—Health Care Providers, Physi-* *cians, and the Deceptive Trade Practices Act,* 26 HOUS L.REV. 109, 140–43 (1989); DAVID F. BRAGG ET AL., TEXAS CONSUMER LITIGATION § 2.02 (2d ed. Supp.1993) (stating that only pure negligence claims are barred by section 12.01(a)). The legislature, which recently amended the Medical Liability and Insurance Improvement Act, has not indicated any disagreement with such an interpretation of section 12.01(a).

intentional breach of express guarantees. Accordingly, we hold that section 12.01(a), which does preclude DTPA suits founded on a breach of the accepted standard of medical care, does not preclude suits under the DTPA for knowing misrepresentation or breach of express warranty in cases in which a physician or health care provider warrants a particular result.[5] For the reasons explained herein, we affirm the judgment of the court of appeals.

CORNYN, Justice, joined by GONZALEZ, Justice, dissenting.

[I]t is not an adequate discharge of duty for courts to say: We see what you are driving at, but you have not said it, and therefore we shall go on as before.

*Johnson v. United States,* 163 F. 30, 32 (1st Cir.1908) (Holmes, J.).

I disagree with the court on two counts: first, in its conclusion that this is *not* a case of alleged medical negligence recast under TEX.BUS. & COM.ANN. §§ 17.41–17.63. (Vernon 1987 & Supp.1994), the Texas Deceptive Trade Practices Act (DTPA), to avoid the bar created by section 12.01 [1] of the Medical Liability and Insurance Improvement Act, TEX. REV.CIV.STAT.ANN. art. 4590i (Vernon Supp. 1994) (MLIIA); and second, in its holding that "[t]he language of section 12.01(a) is clear, unambiguous, and when construed as written, not devoid of meaning," *supra* 889 S.W.2d at 241. The court's reading renders this statutory provision meaningless. Rather than nullify the statute, the court is duty-bound to ascertain the legislature's intent. When the words of a statute produce a doubt as to the meaning the legislature intended, a court's role has long been to determine the "reason and spirit of it." 1 WILLIAM BLACKSTONE, COMMENTARIES *61. Bogged down by semantics, the court succeeds in determining neither.

## MEDICAL NEGLIGENCE CLAIMS RECAST AS DTPA CLAIMS

On April 13, 1987, Janice S. Rhodes sued Bob Sorokolit, M.D., a plastic surgeon, for claims arising out of breast augmentation and abdominal scar revision surgery that Sorokolit performed on Rhodes on February 5, 1985. In paragraph III of her original petition, Rhodes characterized her claim as a "medical negligence cause of action." She alleged that her surgery and follow up care were negligently performed by Sorokolit, and that such negligence was a proximate cause of damages traditionally recognized in medical negligence cases: pain, mental anguish, physical disfigurement, and medical expenses.

After Sorokolit filed his general denial to the original petition, Rhodes filed an amended petition. In that petition she retained her characterization of her claim as "a medical negligence cause of action," reiterated her

---

**5.** Our conclusion that section 12.01(a) does not prevent suit under the DTPA for claims not based on medical malpractice does not suggest that such a suit will succeed either procedurally or on the merits. For example, under Texas common law, a physician is not presumed to warrant a cure or a particular result, but a physician may enter into such an agreement. *See, e.g., Graham v. Gautier,* 21 Tex. 112, 120 (1858) (stating that the rule is that the ordinary undertaking of a physician does not include insurance of a particular result but that special agreements may vary the rule); *Weeks v. Heinrich,* 447 S.W.2d 688, 690 (Tex.Civ.App.—Corpus Christi 1969, writ ref'd n.r.e.); *Helms v. Day,* 215 S.W.2d 356, 358 (Tex.Civ.App.—Fort Worth 1948, writ dism'd). Concerns that a physician's reassurances may be mistaken for a guarantee may properly lead courts to hesitate in concluding that such a contract was created or that a guarantee was offered. *See* JIM MAC PERDUE, TEXAS MEDICAL MALPRACTICE HANDBOOK 9 (1989) (stating that express promises must be distinguished from therapeutic reassurances and expressions of hope, opinion, or predictions that cannot be held to constitute warranties). In addition, we note the possible application of the statute of frauds in such cases when properly raised by a defendant as an affirmative defense. *See* TEX.BUS. & COM.CODE § 26.01(b)(8) (Vernon 1987); TEX.R.CIV.P. 94.

---

**1.** That section follows the subheading, "MISCELLANEOUS PROVISIONS, Exception From Certain Laws," and provides:

Sec. 12.01. (a) Notwithstanding any other law, no provisions of Sections 17.41–17.63, Business & Commerce Code [DTPA], shall apply to physicians or health care providers as defined in Section 1.03(3) of this Act, with respect to claims for damages for personal injury or death resulting, or alleged to have resulted from negligence on the part of any physician or health care provider.

(b) This section shall not apply to pharmacists.

earlier negligence allegations and personal injury damage claims, and added new allegations under the DTPA. Rhodes later abandoned her negligence allegations.

In response to the filing of Plaintiff's First Amended Original Petition, Sorokolit filed special exceptions, claiming that section 12.01 of the MLIIA barred Rhodes' DTPA claim. Agreeing that the MLIIA barred Rhodes' DTPA claims, the trial court sustained the exceptions. When Rhodes declined to amend her pleadings in light of this ruling, the trial court dismissed her case. The court of appeals reversed the trial court's judgment and remanded the case for a trial on Rhodes' express warranty and knowing misrepresentation claims. We granted writ of error to decide whether section 12.01 of the MLIIA bars a DTPA claim for personal injury against a health care provider.

On this much the court and I agree: "Claims that a physician or health care provider was negligent may not be recast as DTPA actions to avoid the standards set forth in the Medical Liability and Insurance Improvement Act." *Supra* 889 S.W.2d at 242. By all indications, the legislature sought to prevent such recasting by enacting section 12.01 of the MLIIA. But contrary to the court's conclusion, that is precisely what has happened here.

### CONSTRUCTION OF THE STATUTE

Under our traditional method of statutory construction, we begin with the words used: If the meaning of the statute is plain, we apply it as written. *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 352 (Tex.1990). We consider the entire statute, however, not just the disputed part. *See State v. Terrell*, 588 S.W.2d 784, 786 (Tex.1979). When the entire MLIIA is considered, it is apparent that an ambiguity exists, for to give section 12.01 the meaning attributed by the court

would render that section meaningless. Under such circumstances, our duty is to ascertain and enforce the legislature's evident purpose in enacting the statute. *See Pennington v. Singleton*, 606 S.W.2d 682, 686 (Tex. 1980).

Despite contrary evidence of the legislature's general and specific purposes, the court concludes "that section 12.01(a) only precludes a DTPA suit against a physician for negligence—that is, a suit founded on a breach of the accepted standard of medical care." 889 S.W.2d at 242. But the court's construction frustrates, rather than facilitates, the legislature's purpose. First, the court's construction not only renders section 12.01 meaningless, it is meaningless in and of itself. DTPA suits are not based on negligence. As we have previously noted:

> The DTPA does not represent a codification of the common law. A primary purpose of the enactment of the DTPA was to provide consumers a cause of action for deceptive trade practices without the burden of proof and numerous defenses encountered in a common law fraud or breach of warranty suit.

*Smith v. Baldwin*, 611 S.W.2d 611, 616 (Tex. 1980). Thus the "accepted standard of medical care"—just like the "ordinary care" standard in general negligence suits—is irrelevant to a cause of action under the DTPA.[2]

Responding to what it perceived to be a "medical malpractice insurance crisis," the legislature intended the MLIIA to reformulate the *entire* law of medical malpractice in Texas. MLIIA at § 1.02(a)(5). The statute's preface explicitly states that the legislature intended to

> make certain modifications to the liability laws as they relate to health care liability claims only and with an intention of the legislature to not extend or apply such

---

**2.** Commentators agree that when section 12.01 is interpreted in this manner as a bar to DTPA actions, it is "of limited or no value." Darrell L. Keith, *The Texas Medical Liability and Insurance Improvement Act—A Survey and Analysis of its History, Construction and Constitutionality*, 36 BAYLOR L.REV. 265, 308 (1984); DAVID BRAGG, PHILLIP MAXWELL & JOE LONGLEY, TEXAS CONSUMER LITIGATION § 2.02, at 34 n. 90 (2d ed.1983). In their

1992 supplement, though, Messrs. Bragg, Maxwell, and Longley state, "the Legislature has exempted from the DTPA pure negligence claims brought against health providers," *id.* at 24 (Supp.1992), an interpretation which seems to contradict their 1983 statement that as a bar to DTPA liability, section 12.01 was "of limited, if any value."

modifications of liability laws to any other area of the Texas legal system or tort law. *Id.* at § 1.02(b)(7). To that end, all legal theories of recovery for personal injury and death against a health care provider were brought within the Act's framework. *See* Jim M. Perdue, *The Law of Texas Medical Malpractice*, 22 Hous.L.Rev. 1, 35–36 (1985) (concluding that the MLIIA forecloses application of DTPA to malpractice claims.).

Consequently, the legislature dictated that all health care liability claims, whether sounding in tort or contract, would thenceforth be analyzed under the rubric of a negligence cause of action, each depending on proof of a health care provider's deviation from accepted standards of medical practice. Thus, contrary to the court's conclusion that the term "negligence" is not defined in the MLIIA, the statute renders synonymous the phrases "health care liability claim" and "medical negligence cause of action." A "health care liability claim" is defined as

> a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care or health care or safety which proximately results in injury to or death of the patient, whether the patient's claim or cause of action sounds in tort or contract.

MLIIA at § 1.03(a)(4). Theories of assault and battery, negligence and fraud, previously used in informed consent cases, were supplanted by a statutory cause of action created by the MLIIA, based on a negligence standard. *Id.* at § 6.02. Pre-suit notice requirements were enacted, *id.* at § 4.01; application of the common law negligence doctrine of *res ipsa loquitur* was restricted, *id.* at § 7.01; damage caps were implemented, *id.* at § 11.02; statutes of limitation were restricted, *id.* at § 10.01; and the standards for admission of expert testimony were codified.

*Id.* at § 14.01. All of these statutory requirements are circumvented by the court's decision.

It should be obvious that the legislature did not intend to lower the burden of proof for the victim of medical malpractice in response to what it found to be a medical malpractice insurance crisis. Yet that is the effect of the court's holding. The court's application of the DTPA to health care liability claims eliminates the plaintiff's burden to establish that harm was foreseeable, an essential element of proximate cause. In its place, the DTPA substitutes the lesser burden of producing cause.[3] Furthermore, permitting health care liability suits under the DTPA eliminates the requirement of expert testimony in a medical malpractice case.[4] These consequences are hardly consistent with the reason and spirit of the MLIIA. By enacting section 12.01(a), the legislature intended to prohibit DTPA suits against physicians arising from the provision of professional medical services.

Finally, the court has construed section 12.01 to allow a DTPA cause of action that is, in turn, barred by a 1977 amendment to the statute of frauds, another part of the same comprehensive statutory plan. Besides being misleading—to Ms. Rhodes and other litigants who will rely on the court's apparent recognition of a cause of action, only to find it barred by the statute of frauds—this construction violates our own mandate that "[i]n ascertaining the intent of the Legislature, all laws bearing on the same subject are to be considered and given effect." *See Jessen Assocs., Inc. v. Bullock,* 531 S.W.2d 593, 600 n. 9 (Tex.1975). The statute of frauds now provides in pertinent part:

### § 26.01 Promise or Agreement Must be in Writing

(a) A promise or agreement described in Subsection (b) of this section is not en-

---

3. Tex.Bus. & Com.Code Ann. § 17.50(a) (Vernon 1987).

4. *See, e.g., Hood v. Phillips,* 554 S.W.2d 160, 165–66 (Tex.1977) ("Unless the mode or form of treatment is a matter of common knowledge or within the experience of the layman, expert testimony will be required to meet this burden of proof."). *See* Darrell L. Keith, *Medical Expert*

*Testimony in Texas Medical Malpractice Cases,* 43 Baylor L.Rev. 1, 5 (1991). Elimination of the conventional requirement of expert testimony in medical malpractice suits is also inconsistent with the specific standards for admission of expert witness testimony enacted by the legislature in 1989. *See id.* at 9 n. 29 (citing Tex.Rev.Civ. Stat.Ann. art. 4590i, § 14.01).

forceable unless the promise or agreement, or a memorandum of it, is

(1) in writing; and

(2) signed by the person to be charged with the promise or agreement or by someone lawfully authorized to sign for him.

(b) Subsection (a) of this section applies to:

. . . .

(8) an agreement, promise, contract, or warranty of cure relating to medical care or results thereof made by a physician or health care provider as defined in Section 1.03, Medical Liability and Insurance Improvement Act of Texas. This section shall not apply to pharmacists.

TEX.BUS. & COM.CODE ANN. § 26.01(b)(8) (Vernon 1987).[5]

For these reasons, I would reverse the judgment of the court of appeals and render judgment for Sorokolit.

---

**5.** Rhodes' allegations are based solely on *oral* misrepresentations and warranties. *See supra*

889 S.W.2d at 240.