Nancy MULLIGAN, Appellant,

v.

**BEVERLY ENTERPRISES–TEXAS INC. d/b/a Leisure Lodge Nursing Home and Healthcare Centers of Texas, Inc. d/b/a Anahuac Healthcare, Appellee.**

No. 14–96–00947–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Oct. 9, 1997.

Rehearing Overruled Nov. 13, 1997.

George M. Bishop, Houston, for appellant.

Deanna Dean Smith, Houston, Michael G. Lee, Irving, for appellee.

Before LEE, AMIDEI and ANDERSON, JJ.

## OPINION

ANDERSON, Justice.

This is a case of alleged nursing home malpractice brought under the Deceptive Trade Practices–Consumer Protection Act [DTPA]. Nancy Mulligan [Mulligan] appeals from a take nothing judgment granted in favor of Beverly Enterprises–Texas, Inc. D/B/A Leisure Lodge Nursing Home and Healthcare Centers of Texas, Inc. D/B/A Anahuac Healthcare. Mulligan initially filed suit against the nursing home owners claiming both negligence and violations of the DTPA. However, the negligence claim was ultimately dropped and the DTPA claim alone went to trial. A directed verdict was subsequently entered against Mulligan.

On appeal, Mulligan brings four points of error. Mulligan contends the trial court erred in entering a directed verdict because (1) her pleadings were sufficient as a matter

of law to support a judgment, (2) the appellees offered no evidence conclusively proving a fact establishing the right to a judgment as a matter of law, (3) the appellants offered evidence of probative force on each DTPA claim sufficient to raise an issue of fact on the material questions, and (4) testimony from two fact witnesses offering evidence on material questions was improperly excluded. We affirm.

In January of 1990, Nancy Mulligan began touring nursing homes in anticipation of moving her aunt, Madeline Smith, into one of the facilities. After investigating several nursing homes, she selected the Leisure Lodge Nursing Home in Anahuac.[1] Mulligan allegedly placed Madeline Smith at Leisure Lodge after talking with the facility administrator and personally touring the nursing home. During discussions with the nursing home, Mulligan received several advertising brochures detailing the services Leisure Lodge provided its residents. Madeline Smith remained a resident at Leisure Lodge until her transfer to Cleveland Regional hospital where she died in 1994.[2]

Mulligan's claims against the nursing home stem from the variance between the anticipated care and actual care she received while a resident at the facility. In her Third Amended Petition, Mulligan claims violations of the DTPA based on the nursing home's alleged knowing misrepresentations about the services it would provide.[3] Additionally, Mulligan argues the nursing home breached express warranties also extended during the initial conversations with Leisure Lodge prior to placing Madeline Smith at the facility.

1. Beverly Enterprises–Texas, Inc. initially owned and operated the Leisure Lodge Nursing Home. It later sold the facility to Healthcare Centers of Texas, Inc. which renamed the nursing home Anahuac Health Care.

2. Madeline Smith's death is unrelated to any claims Mulligan has against the nursing home.

3. Mulligan points to four documents to support her claims. First, she looks to a brochure stating the nursing home would "care for your loved ones." Second, Mulligan identifies a message allegedly written by a nursing home administra-

## Standard of Review

In reviewing a directed verdict on appeal, an appellate court must "view the evidence in the light most favorable to the party against whom the verdict was rendered and disregard all contrary evidence and inferences." *Qantel Business Sys. v. Custom Controls,* 761 S.W.2d 302, 303 (Tex.1988). The judgment must be reversed and the case remanded for a jury determination if there is any evidence of probative value raising a material fact issue. *See id.* at 304. However, the directed verdict must be affirmed if there is no evidence of probative force or if the probative force is so weak that only a mere surmise or suspicion is raised as to the existence of essential facts on an ultimate issue in the case. *See Hycarbex, Inc. v. Anglo–Suisse, Inc.,* 927 S.W.2d 103, 107–108 (Tex.App.—Houston [14th Dist.] 1996, n.w.h.). Furthermore, a directed verdict is proper only if "no other judgement could be rendered and the prevailing party is entitled to judgment as a matter of law." *Questa Energy Corp. v. Vantage Point Energy, Inc.,* 887 S.W.2d 217, 221 (Tex.App.—Amarillo 1994, writ denied). Where the judgment does not specify the grounds upon which it is based, the nonmovant must challenge all of the grounds raised in the motion for directed verdict. *See Hycarbex,* 927 S.W.2d at 108. If any of those grounds are sound, the judgment must be affirmed. *Id.*

## Medical Negligence Recast Under the DTPA

In Beverly Enterprises first reply point, it contends Mulligan's DTPA claim is barred by the Medical Liability and Insurance Improvement Act.[4] Section 12.01(a) of the act provides in part:

tor stating that she will "make sure ... [Madeline Smith] gets taken care of." Third, she points to a letter written by a Beverly Enterprises administrator stating she will continue to "provide the best nursing care available." Fourth, Mulligan focuses on a list of services maintained by Leisure Lodge Nursing Home stating the company will provide certain services to residents including "nursing care to meet the needs of the resident."

4. Beverly Enterprises asserted both in its trial brief and orally at trial that it was entitled to a directed verdict on several grounds including the

Nothwithstanding any other law, no provisions of Sections 17.41–17.63, Business & Commerce Code [DTPA], shall apply to physicians or health care providers as defined in Section 1.03(3) of this Act, with respect to claims for damages for personal injury or death resulting, or alleged to have resulted, from negligence on the part of any physician or health care provider. TEX.REV.CIV. STAT. ANN. art. 4590i § 12.01(a) (Vernon Supp.1997). The Texas Supreme Court has interpreted this section of the act to bar negligence claims against health care providers which are recast as DTPA claims. *See Walden v. Jeffery*, 907 S.W.2d 446, 447–448 (Tex.1995); *Gormley v. Stover*, 907 S.W.2d 448, 450 (Tex.1995). The "underlying nature" of the claim determines whether a DTPA action is barred by § 12.01(a). *See Sorokolit v. Rhodes*, 889 S.W.2d 239, 242 (Tex.1994) (noting warranty or representation claims requiring a determination of whether the standard of care was breached involve negligence and are precluded). Therefore, simply alleging a breach of warranty or knowing misrepresentation under the DTPA is not sufficient if the "underlying nature" of the claim is essentially negligence.[5]

In addressing a factually similar case, the Dallas Court of Appeals held the Medical Liability Act barred DTPA claims against a nursing home, Sunnyvale Manor, for representations and warranties based on the alleged services the nursing home provided. *See Waters v. Del–Ky, Inc.*, 844 S.W.2d 250 (Tex.App.—Dallas 1992, no writ). In *Waters*, a patient's sister brought a survivorship action against the nursing home responsible for her brother's care. *See Id.* at 252. She alleged the nursing home breached express warranties to provide certain services to her brother including " 'prescribed physical and medical care,' " maintenance of organized nursing services and compliance with Texas State nursing home standards. *Id.*

In rejecting the sister's express warranty claim, Justice Baker held the claims, whether cast as tort or contract, were nothing more than claims for negligence based on deviations from the standard of care. *Id.* at 258 (citing TEX.REV.CIV. STAT. ANN. art. 4590i § 1.03(a)(4) (Vernon Supp.1996)) (identifying a "Health care liability claim" under the Medical Liability Act as one concerning "treatment, lack of treatment, or other claimed departure from accepted standards of medical care or health care or safety which proximately results in injury to or death of the patient, whether the patient's claim or cause of action sounds in tort or contract"). Simply alleging breach of an express warranty by Sunnyvale that it would provide certain services was not enough to prevent preclusion of such claim under the Medical Liability Act because the level of care the patient received, if inconsistent with the warranty, is only a claim for negligence.[6]

argument that the Medical Liability Act barred Mulligan's DTPA claim as a matter of law. The trial court granted a take nothing judgment because Mulligan presented no evidence on at least one element of her cause of action. This Court may affirm a directed verdict even if the trial court's reasoning is in error, provided it can be supported on another basis. *See Hutson v. City of Houston*, 418 S.W.2d 911, 914 (Tex.Civ.App.—Houston [14th Dist.] 1967, writ ref'd n.r.e.). Thus, if Mulligan's claims are barred by the Medical Liability Act, this court may affirm the directed verdict. *Id.*

5. In two recent cases, the Texas Supreme Court twice rejected negligence claims recast as DTPA claims. *See Walden*, 907 S.W.2d at 448 (holding claim against dentist based on representation that dentures would fit properly was actually a negligence claim); *Gormley*, 907 S.W.2d at 450 (rejecting DTPA claim for misrepresentations concerning ability to wear dentures because they

went to the standard of care for dentists under the circumstances which was ultimately a negligence claim). Both cases focused on the "underlying nature" of the claim asserted to determine whether the DTPA claim was really a claim for negligence.

6. At oral argument, Mulligan's counsel attempted to distinguish the case at bar from other cases barring negligence/DTPA claims under article 4590i on the basis that the nursing home owners gave her *written* representations about the care Ms. Smith would receive. In *Waters*, the Court directly addressed an identical assertion and stated "Despite [appellant's] assertions, we see no difference between implied and express warranties for purposes of article 4590i." *Waters*, 844 S.W.2d at 258. We agree. No court addressing this issue has ever suggested the distinction between a permissible medical care DTPA claim versus impermissible claim hinges on the presence of a writing.

The same rationale applies to this cause. Mulligan attempts to recast a negligence claim as a DTPA action based on representations made by the nursing home that it would perform certain services. Mulligan alleges the nursing home made representations about the services Madeline Smith was to receive and express warranties as to the care to be provided. Mulligan specifically identifies only the alleged express warranty to take good care of Madeline Smith.

Each alleged warranty or representation goes directly to the level of care provided to Madeline Smith by the nursing home. Mulligan does not argue the services were entirely withheld while Madeline Smith lived at the nursing home. Instead, she apparently argues the services were provided, but not to a level she found acceptable or in compliance with normal standards.[7] Mulligan's claim, that the services rendered were deficient, is identical to the claim in *Waters* and fails for the same reasons.

The case at bar is distinguishable from *Sorokolit* where the doctor guaranteed a particular result to Janice Rhodes. The DTPA claims were allowed in that case because the doctor breached his express warranties by not delivering the *exact* promised post surgery result. *See Sorokolit,* 889 S.W.2d at 242–243. Here, the facts are different. The representations made to Mulligan, for example, that no resident would ever fall or would be moved from bed at a set time each day, were not guarantees. Instead, they were simply representations the nursing home would "care" for Madeline Smith. A conclusion that the representations and warranties were breached requires a determination of whether the nursing home failed to meet the standard of medical care for Ms. Smith, and therefore the underlying nature of the claim is one of negligence. Here, unlike Janice Rhodes, the appellee in *Sorokolit,* there was no guarantee of the results of the medical care given to Ms. Smith, only that she would be taken care of. This lack of specificity is a critical factor that distinguishes the case at bar from *Sorokolit.* Further, none of the documents relied on by Mulligan to support her claim, described in note 3 above, contain the necessary warrant of cure or promise of a particular result for Ms. Smith.[8] As repeatedly stated by the Supreme Court in *Sorokolit, Walden,* and *Gormley,* claims that a health care provider was negligent may not be recast as DTPA actions to avoid the standards set forth in the Medical Liability Act. Therefore, we hold that Mulligan's claim against this health care provider is such a recast claim, and as such it is barred by the Medical Liability Act.[9] Accordingly, the trial court properly granted a directed verdict against Mulligan.

Because we have held the nursing home owners were entitled to judgment based on preclusion of Mulligan's sole claim by the Medical Liability Act, we overrule all four of her points of error.

The judgment of the trial court is affirmed.

---

7. Mulligan testified as to several injuries her aunt allegedly received while staying at the nursing home. She testified her aunt fell and sustained a broken hip twice. She also testified the nursing home allowed her aunt to sit in urine and feces. Additionally, she complained her aunt was forced to remain in bed for extended periods of time without the opportunity to move about the home. She repeatedly testified the basis for complaining about each of these injuries was concern her aunt was not receiving adequate attention from the nursing and administrative staff.

8. *See* Tex. Bus. & Com.Code Ann. § 26.01(b)(8) (Vernon 1987). Beverly Enterprises affirmatively pleaded that Mulligan's express warranty allegations were barred by the statute of frauds, Sec. 26.01. *See* Tex R. Civ. P. 94. Because we hold that Mulligan's claims are barred by article 4590i, we need not reach the question of whether Mulligan's claims are barred by the statute of frauds.

9. Mulligan abandoned her negligence claim prior to trial when she filed her third amended petition asserting only a DTPA cause of action. Provided she had adhered to the standards of the act, Nancy Mulligan could have asserted her negligence cause of action under the Medical Liability Act.