Affirmed and Majority and Concurring Opinions filed June 21, 2005









Affirmed and Majority and Concurring Opinions filed
June 21, 2005.

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-98-00166-CV

____________

 

ARLENE SCOTT,
Individually and as Representative of the ESTATE OF DOROTHEA SCOTT, Deceased,
JERRY SCOTT HUBBARD, JAMES DAVID SCOTT, NORMAN SCOTT, and ALBERT SCOTT, Appellants

 

V.

 

BEECHNUT MANOR,
LIVING CENTERS OF TEXAS, INC., LIVING CENTERS OF AMERICA, INC., VENCARE, INC.,
VENCORE HOSPITAL, VENCOR, INC., and ROBERT B. TEAGUE, M.D., Appellees

 



 

On Appeal from the 133rd
District Court

Harris County, Texas

Trial Court Cause No. 96-61628

 



 

M A J O R I T Y   O P I N I O N








Arlene Scott, individually and as representative of the
Estate of Dorethea Scott, deceased, Jerry Scott Hubbard, James David Scott,
Norman Scott, and Albert Scott, (the AScotts@) appeal from the summary judgment
granted in favor of appellees, Beechnut Manor, Living Centers of Texas, Inc.,
Living Centers of America, Inc. (ABeechnut Manor@), Vencare, Inc., Vencor Hospital,
Vencor, Inc. (AVencor@), and Robert B. Teague, M.D., on
their claims of violations of the Deceptive Trade Practices-Consumer Protection
Act (ADTPA@)[1]
and common law negligence based on res ipsa loquitur, and the dismissal of
their negligence claim under the Medical Malpractice and Insurance Improvement
Act (the AAct@). 
We affirm.

In 1993, Dorethea Scott suffered a stroke that left her
dependent on a ventilator.  On October
28, 1994, the Scott family admitted her to Beechnut Manor nursing home, where
she resided in the respiratory care unit, which was staffed by Vencor.  Ms. Scott was under the care of Dr. Teague,
who ordered constant oxygen therapy for her. 
The Scotts claim they were assured by the administrator that Ms. Scott
would be kept on oxygen at all times. 
The Scotts allege Ms. Scott was taken off of oxygen on December 27,
1994, while routine maintenance was performed on the ventilator.  After completing the maintenance procedure,
however, the technician allegedly failed to reconnect Ms. Scott=s oxygen.   Ms. Scott died later that day.  

On December 6, 1996, the Scotts sued appellees alleging
negligence under the Act, common law negligence based on res ipsa loquitur, and
violations of the DTPA.  On June 30, 1997,
the trial court dismissed the Scotts= health care liability claims under
the Act, and on November 4, 1997, the trial court granted appellees= motion for summary judgment on the Scotts= remaining claims for common law
negligence based on res ipsa loquitur and DTPA violations.

Dismissal of
Claims under the Act

In their first issue, the Scotts contend
the trial court erred in dismissing their claims under the Act and in
overruling their motion for a new trial.








Under the Act, a claimant must provide
expert reports and curricula vitae to counsel for each physician or health care
provider against whom a health care liability claim is asserted.  Further, the claimant must provide these
reports and curricula vitae within 180 days after the filing of a health care
liability claim or voluntarily nonsuit the action against the physician or
healthcare provider.  Tex. Rev. Civ. Stat. Ann. art. 4590i, ' 13.01(d).[2]  If the claimant fails to furnish the
requisite reports and curricula vitae and fails to nonsuit the defendants, the
court shall, on the motion of the affected physician or health care provider,
dismiss the action with prejudice.  Id.
at ' 13.01(e)(3).

The Scotts did not timely file expert
reports and curricula vitae within 180 days of the filing of their suit as
required by section 13.01(d).  The time
for filing the reports expired on June 4, 1997. 
Thus, on June 5 and 6, 1997, appellees sought a dismissal of all claims
under the Act pursuant to section 13.01(e)(3). 
The Scotts responded on June 13, 1997, by filing the necessary reports
and curricula vitae along with a ASection 13.01(f)
Motion for Extension of Time.@








Section 13.01(f) provides that the Acourt may, for
good cause shown after motion and hearing, extend any time period specified in
Subsection (d) of this section for an additional 30 days.@[3] The Scotts assert that their motion
for extension of time was supported by uncontroverted affidavits establishing Agood cause@ for the nine-day delay in filing
their expert reports and curricula vitae. 
Thus, the Scotts argue the trial court abused its discretion in denying
their motion for an extension of time as a matter of law.

It is inconsequential whether the Scotts established Agood cause@ because even if they made a clear
showing of Agood cause,@ the trial court was not obliged to
grant the requested extension.  See
Tesch v. Stroud, 28 S.W.3d 782, 787 (Tex. App.CCorpus
Christi 2000, pet. denied); Knie v. Piskun, 23 S.W.3d 455, 462 (Tex.
App.CAmarillo
2000, pet. denied); Schorp v. Baptist Memorial Health System, 5 S.W.3d
727, 732 (Tex. App.CSan
Antonio 1999, no pet.); Roberts v. Medical City Dallas Hosp., Inc., 988
S.W.2d 398, 402 (Tex. App.CTexarkana
1999, pet. denied).  Accordingly, the trial court
did not err in denying the Scotts= motion for an
extension of time, dismissing their suit with prejudice, and overruling their
motion for new trial.  The first point of
error is overruled.

                                                        Summary
judgment

In their second issue, the Scotts
contend the trial court erred in granting summary judgment to appellees.  The Scotts alleged the following causes of
action in their second amended petition: 
(1) common-law negligence involving the doctrine of res ipsa loquitur;
(2) medical malpractice under the Act, and (3) violations of the DTPA.  In September 1997, the trial court granted
appellees= request for special exceptions,
ordering the Scotts to replead and eliminate their DTPA claims and common law
negligence claims based on art. 4590i and res ipsa loquitur.  After the Scotts failed to replead, appellees
moved for summary judgment on grounds that the Scotts= claim for common law negligence
based on res ipsa loquitur did not fit in one of the recognized exceptions
applicable to a medical malpractice suit and the Scotts merely attempted to
recast a negligence claim as a DTPA claim. 
On November 4, 1997, the trial court granted summary judgment on the
Scotts= remaining claims.  








To prevail on a motion for summary judgment, a defendant must
establish that no material fact issue exists and that it is entitled to
judgment as a matter of law.  Rhone-Poulenc,
Inc. v. Steel, 997 S.W.2d 217, 222 (Tex. 1999).  Once the defendant establishes that no
genuine issue of material fact exists regarding an element of the plaintiff=s claim, the plaintiff must present
competent summary judgment evidence raising a fact issue on that element.  Guest v. Cochrane, 993 S.W.2d 397, 401
(Tex. App.CHouston [14th Dist.] 1999, no
pet.).  In conducting our review of the
summary judgment, we take as true all evidence favorable to the nonmovants, and
make all reasonable inferences in the nonmovant=s favor.  KPMG Peat Marwick v. Harrison County Hous.
Fin. Corp., 988 S.W.2d 746, 748 (Tex. 1999).  A defendant, as movant, is entitled to
summary judgment if it either disproves at least one essential element of each
of the plaintiff=s causes of action or establishes all the elements of an
affirmative defense.  American Tobacco
Co. v. Grinnell, 951 S.W.2d 420, 425 (Tex. 1997).  If the trial court sustains a defendant=s special exception that the plaintiff
failed to state a cause of action and the plaintiff fails to replead when
ordered to do so, summary judgment may properly be granted.  Haase v. Glazner, 62 S.W.3d 795, 800
(Tex. 2001); Sumerlin v. Houston Title Co., 808 S.W.2d 724, 726 (Tex.
App.CHouston [14th Dist.] 1991, writ
denied).  

                                                              Res Ipsa Loquitur

Res ipsa loquitur is applicable when the following two
circumstances are present:  (1) the
character of the accident is such that it would not ordinarily occur in the
absence of negligence, and (2) the instrumentality causing the injury is shown
to have been under the management and control of the defendant.  Haddock v. Arnspiger, 793 S.W.2d 948,
950 (Tex. 1990).  Res ipsa loquitur is a
rule of evidence by which negligence many be inferred by the jury; it is not a
separate cause of action from negligence. 
Id.  








With regard to medical malpractice cases, res ipsa loquitur
applies only to those cases to which it had been applied as of August 29, 1977,
the effective date of the Act.  Tex. Rev. Civ. Stat. Ann. art. 4590i, ' 7.01.[4]  Res ipsa loquitur is inapplicable to medical
malpractice cases except where the nature of the alleged malpractice and
injuries are within the common knowledge of laymen, requiring no expert
testimony.  Haddock, 793 S.W.2d at
951.  The three recognized areas wherein
res ipsa loquitur is applicable to medical malpractice claims are negligence in
the use of mechanical instruments, operating on the wrong portion of the body,
and leaving surgical instruments or sponges within the body.  Id. 


However, not every medical malpractice case involving the use
of a mechanical instrument permits the application of res ipsa loquitur.  Id. 
Res ipsa loquitur is not applicable to those cases in which the use of
the mechanical instrument is not a matter within the common knowledge of
laymen.  Id.  

Although the Scotts allege the negligent use of a mechanical
instrument, i.e., the ventilator, we conclude the use of the instrument
does not fall plainly within the common knowledge of a lay person.  Dr. Teague claimed in his affidavit that Ms.
Scott=s death was caused by respiratory
failure, due to, or as the likely consequence of, a stroke.  Dr. Teague further explained that Ms. Scott
was Aventilator dependent, and required
tube feeding, continuous nebulizer treatments, and trach care.@ 
Even if it is common knowledge that a ventilator assists a patient to
breathe, we find lay persons require the assistance of expert testimony before
they can presume that an injury is due to the negligent misuse of such an
instrument. 

Because the Scotts have not alleged facts falling within the
narrow exception for res ipsa loquitur in a medical malpractice case, the trial
court did not err in granting summary judgment on the grounds that the
negligence claim relying on res ipsa loquitur fails as a matter of law. 








                                                                         DTPA

The DTPA does not
apply to health care providers with respect to claims for damages for personal
injury or death resulting, or alleged to have resulted, from negligence.  Tex.
Rev. Civ. Stat. Ann. art. 4590i, ' 12.01(a).[5]  Section 12.01(a) precludes a DTPA claim
against a physician if it is based on a breach of the accepted standard of
medical care.  Sorokolit v. Rhodes,
889 S.W.2d 239, 242 (Tex. 1994). 
However, if the alleged DTPA claim is not based on the physician=s breach of the
accepted standard of medical care, such DTPA claim is not precluded by section
12.01(a).  Id.  A claim that a physician or health care
provider was negligent may not be recast as a DTPA claim to avoid the standards
set forth in the Act.  Id.  To determine whether a DTPA claim is based on
negligence, the court should focus solely on the plaintiff=s pleadings.  MacGregor Med. Ass=n v. Campbell, 985 S.W.2d 38,
41 (Tex. 1998).  Thus, the underlying
nature of a claim determines whether section 12.01(a) bars a claim for
violation of the DTPA.  Id.; Sorokolit,
889 S.W.2d at 242.  A health care
liability claim is defined by the Act as Aa cause of action
against a health care provider or physician for treatment, lack of treatment,
or other claimed departure from accepted standards of medical care or health
care or safety which proximately results in injury to or death of the patient,
whether the patient=s claim or cause of action sounds in tort
or contract.@  Tex. Rev. Civ. Stat. Ann. art. 4590i, ' 1.03(a)(4).[6]  Section 12.01(a) does not preclude DTPA
actions for knowing misrepresentation or breach of express warranty in cases in
which a physician or health care provider warrants a particular result.  Sorokolit, 889 S.W.2d at 242. 








With respect to their DTPA claim, the Scotts alleged:

Plaintiffs would
show that Defendants expressly warranted and represented that Ms. Scott would
be kept on oxygen, but Defendants breached that express warranty and
representation and allowed Ms. Scott to go off oxygen, or inadequate oxygen,
all to her detriment.  This
representation was Aknowing@ by defendants and
the warranty in question was a warranty that Awarrants a
particular result@, namely that Ms. Scott would be kept on
oxygen.  The breach of such warranty and
the knowing misrepresentation alleged just above constituted deceptive trade
practices, all of which were a proximate cause of the actual damages
hereinafter alleged.

In Mulligan v. Beverly Enters.-Tex.,
Inc., we found similar claims were essentially negligence-based claims
rather than DTPA claims.  954 S.W.2d 881,
884 (Tex. App.CHouston [14th Dist.] 1997, no pet.).  In that case, Mulligan alleged that the
nursing home made representations about the services her aunt was to receive
and express warranties about the care to be provided.  Id. 
However, we determined that each alleged warranty or representation went
to the level of care provided by the nursing home to the aunt. Id.  We noted that Mulligan did not allege that
services were entirely withheld from her aunt, but that the services provided
were not of a level she found acceptable or in compliance with normal
standards.  Id.  We held a conclusion that the representations
and warranties were breached required a determination of whether the nursing
home failed to meet the standard of medical care and, therefore, Mulligan was
attempting to recast her negligence claim as a DTPA claim.  Id. 









In Waters v. Del-Ky, Inc., the
plaintiff sued the defendant nursing home for breach of an express warranty
that the nursing home would provide specific services when it had not.  844 S.W.2d 250, 258 (Tex. App.CDallas 1992, no
writ).  The plaintiff alleged that the
nursing home breached express warranties of the physical and medical care it
would provide, that its personnel would provide adequate and proper supervised
care, that it would comply with all standards of participation promulgated by
the Texas Department of Health, and that it would correct the deficiencies in
care.  Id.  The court of appeals determined that the
plaintiff=s claims were claims for lack of treatment
or other claimed departure from accepted standards of medical care, health
care, or safety.  Id.  

Similarly, we find the Scotts= DTPA claim that
appellees Aexpressly warranted and represented that
Ms. Scott would be kept on oxygen, but that [appellees] breached that express
warranty and representation and allowed Ms. Scott to go off oxygen, or
inadequate oxygen, all to her detriment,@ is nothing more
than an impermissible attempt to recast a negligence claim as a DTPA
claim.  Their claim is one concerning a
departure from accepted standards of medical care, health care, or safety.  There is no claim of guaranteed results in
the care appellees would provide to Ms. Scott. 
Any determination that the representations and warranties were breached
necessarily would require a determination of whether appellees failed to meet
the standard of medical care for Ms. Scott. 
We conclude the trial court properly granted summary judgment on the
ground that the Act precluded the Scotts from casting their negligence claim as
a DTPA claim.  The Scotts= second issue is
overruled.

Accordingly, the judgment of the trial
court is affirmed.

 

 

 

 

/s/      J. Harvey Hudson

Justice

 

 

Judgment rendered and Majority and
Concurring Opinions filed June 21, 2005.

Panel
consists of Justices Anderson, Hudson, and Frost.  (Frost, J., concurring).











[1]  See Tex. Bus. & Com. Code Ann. '' 17.41B.63 (Vernon 2002 & Supp. 2004B05). 





[2]  Section 13.01
of the Act was formerly found at Tex.
Rev. Civ. Stat. Ann. art. 4590i, '
13.01.  See Act of May 5, 1995,
74th Leg., R.S., ch. 140, ' 1, 1995 Tex. Gen. Laws 985, 985B87, repealed by Act of June 2, 2003, 78th Leg.,
R.S., ch. 204, ' 10.09, 2003 Tex. Gen. Laws 847, 887 (current version
found at Tex. Civ. Prac. & Rem. Code
Ann. ' 74.351 (Vernon Supp. 2004B05)).  The
former statute continues in effect for cases filed before September 1,
2003.  Because this case was filed in
1996, the former statuteCTex. Rev. Civ.
Stat. Ann. art. 4590iCis applicable and all references are to the former
statute.  Section 13.01(d) states:

Not later
than the later of the 180th day after the date on which a health care liability
claim is filed or the last day of any extended period established under Subsection
(f) or (h) of this section, the claimant shall, for each physician or health
care provider against whom a claim is asserted:

(1) furnish to counsel for each physician or health care provider one
or more expert reports, with a curriculum vitae of each expert listed in the
report; or

(2) voluntarily nonsuit the action against the physician or health care
provider.

Id. 





[3]  Tex. Rev. Civ. Stat. Ann. art. 4590i, ' 13.01(f).





[4]  Section 7.01
of the Act was formerly found at Tex.
Rev. Civ. Stat. Ann. art. 4590i, '
7.01.  See Act of June 16, 1997,
65th Leg., R.S., ch. 817, ' 7.01,
1977 Tex. Gen. Laws 2039, 2050, repealed by Act of June 2, 2003, 78th
Leg., R.S., ch. 204, ' 10.09, 2003 Tex. Gen. Laws 847, 887 (current version
found at Tex. Civ. Prac. & Rem. Code
Ann. ' 74.201 (Vernon Supp. 2004B05)).  Section
7.01 states that A[t]he common-law doctrine of res ipsa loquitur shall
only apply to health care liability claims against health care providers or
physicians in those cases to which it has been applied by the appellate courts
of this state as of the effective date of this subchapter.@  Id.





[5]  Section 12.01
of the Act was formerly found at Tex.
Rev. Civ. Stat. Ann. ' 12.01.  See
Act of June 16, 1977, 65th Leg., R.S., ch. 817, ' 12.01, 1977 Tex. Gen. Laws 2039, 2053, repealed by
Act of June 2, 2003, 78th Leg., R.S., ch. 204, ' 10.09, 2003 Tex. Gen. Laws 847, 887 (current version
found at Tex Civ. Prac. & Rem. Code
Ann. ' 74.004 (Vernon Supp. 2004B05).  Section
12.01(a) provides that A[n]otwithstanding any other law, no provisions of
sections 17.41B17.63, Business & Commerce Code, shall apply to physicians
or health care providers as defined in Section 1.03(a) of this Act, with
respect to claims for damages for personal injury or death resulting, or
alleged to have resulted, from negligence on the part of any physician or
health care provider.@  Id.





[6]  Section
1.03(a)(4) of the Act was formerly found at Tex.
Rev. Civ. Stat. Ann. ' 1.03(a)(4).  See
Act of June 16, 1977, 65th Leg., R.S., ch. 817, ' 12.01, 1977 Tex. Gen. Laws 2039, 2041, repealed by
Act of June 2, 2003, 78th Leg., R.S., ch. 204, ' 10.09, 2003 Tex. Gen. Laws 847, 887 (current version
found at Tex. Civ. Prac. & Rem. Code
Ann. ' 74.001(a)(13) (Vernon Supp. 2004B05)).