**Manuela RUIZ and Robert Ruiz, Appellants,**

v.

**WALGREEN CO., Appellee.**

**No. 14–00–01255–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

June 6, 2002.

**236**

Leonard A. Cruse, League City, Otto D. Hewitt, III, Alvin, for appellants.

John Philip Griffis, Houston, for appellees.

Panel consists of Chief Justice BRISTER and Justices FOWLER and SEYMORE.

## OPINION

WANDA McKEE FOWLER, Justice.

Appellants, Manuela Ruiz and her husband, Robert Ruiz, appeal the dismissal of their claims against Walgreen Co. ("Walgreen") for injuries Manuela allegedly sustained by ingesting medication from a misfilled prescription. The trial court dismissed their claims for failing to file an expert report under the Medical Liability and Insurance Improvement Act ("MLIIA" or "Act"). Concluding that (1) the MLIIA governs the Ruizes' cause of action and (2) the Ruizes were required to file an expert report, we affirm the judgment of the trial court.

FACTUAL AND PROCEDURAL BACKGROUND

The following facts were drawn from the Ruizes' second amended petition and the clerk's record. Walgreen has generally denied the Ruizes' allegations.

Manuela presented a prescription for "Magsal" to a Walgreen pharmacist to be filled. However, he misfilled the prescription with "Nizoral." After examining the medication at the pharmacy, Manuela told the pharmacist she thought he had made a mistake—that the prescription had been improperly filled. The pharmacist assured Manuela he had not made a mistake, explaining that the drug looked different because it was a generic substitute. Later that evening, when Manuela opened the medication at home, she again became concerned and telephoned the pharmacist. He encouraged Manuela to take the medication, explaining again that it only appeared to be the wrong medication because it was a generic substitute. Manuela took the medication and subsequently refilled the prescription.

During the time Manuela was taking the medication, she felt weak and nauseous. She also vomited and experienced dry heaves. Ultimately, due to these symptoms, Manuela was hospitalized for three days. The Ruizes' family physician and the consulting physician determined that her condition was caused by an overdose of the incorrectly filled prescription Nizoral. The pharmacist later admitted to Manuela that he had misfilled the prescription.

The Ruizes gave notice of their claims to Walgreen "pursuant to the provisions of Art. 4590i, § 4.01(d) of the Medical Liability and Insurance Improvement Act...." The Ruizes then filed suit against Walgreen. Their second amended petition alleges the following in the alternative: (1) "negligent acts and omissions," *i.e.*, the pharmacist failed to read the prescription correctly and failed to verify the correct prescription; (2) "breach of express and implied warranties"; and (3) "breach of contract." The petition also alleged that these "negligent acts and omissions" caused Manuela to become seriously ill and suffer "extensive, debilitating and life threatening injuries which severely diminished her enjoyment of life and her life expectancy." Finally, the petition alleged that "[p]rior to the incident ... Ruiz wa snot [sic] suffering from any of the symptoms that resulted from the incorrect filling of the prescription that was also an overdose."

The Ruizes did not file an expert report as required by the Act, and appellee filed a motion to dismiss for the Ruizes' failure to do so. After an initial dismissal and reinstatement, the Ruizes again failed to file an expert report, and, after a second motion to dismiss, the trial court dismissed the case with prejudice.

DISCUSSION

On appeal, the Ruizes give two reasons they claim an expert report was not required: (1) the MLIIA is not intended to govern any other area of the Texas legal system or tort law, and accordingly, their causes of action for breach of warranty and deceptive trade practices are governed by the common law or the Deceptive Trade Practices Act ("DTPA"), which do not require an expert report; and (2) if the MLIIA does apply to their case, the case is excepted from the expert report requirement because *res ipsa loquitur* applies to the pharmacist's negligence and no expert is needed. Before addressing these claims, we will review the pertinent portions of the MLIIA.

**The Medical Liability and Insurance Improvement Act**

In response to a dramatic increase in health care liability claims in the 1970s, the

Texas Legislature passed the MLIIA to curtail a "medical malpractice insurance crisis in the State of Texas." TEX.REV.CIV. STAT. ANN. art. 4590i, § 1.02 (Vernon Supp. 2001). To thwart an adverse impact on the availability of medical care and to prevent rising costs created by the lawsuit crisis, a plaintiff alleging medical malpractice must comply with several procedural requirements of the Act, one of which is to provide each physician or health care provider with an expert report giving a fair summary of the expert's opinions regarding the applicable standard of care and the causal nexus between the health care provider's failure to meet the applicable standard of care and the plaintiff's injuries. *Id.* § 13.01(d)(1), (r)(6).

For the provisions of the Act to govern a claim, the cause of action must meet the Act's definition of a "health care liability claim":

> 'Health care liability claim' means a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care or health care or safety which proximately results in injury to or death of the patient, whether the patient's claim or cause of action sounds in tort or contract.

*Id.* § 1.03(a)(4). Thus, a health care liability claim is one (1) brought against a health care provider, (2) for, among other things, a departure from accepted standards of medical care or health care (3) which proximately results in injury, (4) whether the patient's claim sounds in tort or contract.

A pharmacist is a health care provider for purposes of the Act.[1] *Id.* § 1.03(a)(3). However, the Act controls only "those ac-tivities limited to the dispensing of prescription medicines which result in health care liability claims," or those actions which relate to the essence of what a pharmacist does: filling prescriptions. *Id.* § 1.03(a)(7).

### THE RUIZES' CLAIMS ON APPEAL

The Ruizes have two claims on appeal. Their first claim is that the Act does not apply because this is not a medical malpractice claim or a claim for the departure from an accepted standard of care. Instead, the Ruizes claim that they have alleged DTPA and breach of warranty claims.

■ We have reviewed their live petition and do not find either cause of action. The petition does not allege what implied warranties were made, much less what express warranties were made. In fact, other than the mention of the word "warranty" in the paragraph of their pleading in which they set out their causes of action, "warranty" appears nowhere in the petition, nor is there any mention of a promise or guarantee.

■ Likewise, the DTPA is never mentioned and there are no allegations that the pharmacist's actions violated particular sections of the DTPA, nor does the petition contain any language from the DTPA (such as alleging that Walgreen represented that the goods or services had characteristics, uses or benefits that they did not have). *See* TEX. BUS. & COM.CODE ANN. §§ 17.46, 17.50 (Vernon 1987 & Supp. 2002). We find no DTPA allegations, and find no claim other than a straightforward medical malpractice claim. *See, e.g., MacGregor Med. Assoc. v. Campbell,* 985

---

1. " 'Health care provider' means any ... pharmacist, ... acting in the course and scope of his employment." *Id.* § 1.03(a)(3).

S.W.2d 38, 40 (Tex.1998) (per curiam); *Gomez v. Matey*, 55 S.W.3d 732, 734–35 (Tex. App.-Corpus Christi 2001, no pet.); *Nguyen v. Kim*, 3 S.W.3d 146, 149–50 (Tex. App.-Houston [14th Dist.] 1999, no pet.).

In an attempt to convince us that they are right, the Ruizes cite us to several cases in which courts have found separate claims. However, these cases involved separate, independent torts that were committed by a medical professional. For example, in one case, the court found ordinary negligence when an employee of a home health care service company negligently placed a supply bag in such a way that it later fell on the plaintiff and further injured him. *See Rogers v. Crossroads Nursing Serv., Inc.*, 13 S.W.3d 417, 419 (Tex.App.-Corpus Christi 1999, no pet.). We do not have a separate, independent negligent act here as in *Rogers*. In another case, a plastic surgeon guaranteed the results of his surgery, promised very specific results, and knowingly misrepresented his skills and the results he could achieve. The plaintiff alleged breach of express and implied warranties and also plead DTPA claims, mentioning specific DTPA provisions. *See Sorokolit v. Rhodes*, 889 S.W.2d 239, 242 (Tex.1994). Again, as we have already stated, unlike the plaintiff in *Sorokolit*, the Ruizes have not pleaded these claims. In yet another case, the plaintiffs alleged that the hospital improperly placed a tube in a patient causing him to suffocate, and then concealed his death for several days to hide the hospital's negligence. *See Garcia v. Columbia Med. Ctr.*, 996 F.Supp. 605, 610 (E.D.Tex.1998). Once again, we do not have a separate fraudulent act unrelated to the medical care.

■ In short, this case involves no separate fraudulent act and no separate tort. This is a medical malpractice case in its purest form. It derives from the pharmacist's alleged negligent actions that were inextricably related to his professional duty of dispensing medication; regardless of what the Ruizes would like this case to be, it is a claim that the pharmacist departed from an accepted medical standard.

■ Finally, the Ruizes give us one other reason the Act does not apply to this case. They argue that, even if the Act applies, an expert report is unnecessary because this is a matter "plainly within the common knowledge of laymen." *See Martin v. Petta*, 694 S.W.2d 233, 239 (Tex. App.-Fort Worth 1985, writ ref'd n.r.e.). They point out that they invoked the doctrine of *res ipsa loquitur* below and that the doctrine is incorporated into the Act in article 4590i, section 7.01. That section limits application of the doctrine to "those cases to which it has been applied by the appellate courts of this state as of the effective date of this subchapter." Further, the doctrine applies only when the nature of the alleged malpractice and injuries are plainly within the common knowledge of laymen, requiring no expert testimony. *Haddock v. Arnspiger*, 793 S.W.2d 948, 951 (Tex.1990). The Ruizes point to no pre 1977 cases applying the doctrine to substitution of a prescribed medication, and do not explain how laymen would know that substitution in this case was improper.

■ But, assuming—without deciding—that *res ipsa loquitur* does apply and the Ruizes would not need an expert to testify that it is unacceptable for a pharmacist to give a patient a different medication than the one prescribed, the Ruizes still need an expert. They would still be required to prove they were injured, and that the pharmacist's negligence proximately caused their injuries. In addition, because they also are claiming that the pharmacist gave Manuela too great a dosage of Nizoral, they would need an expert to testify

that the amount was an overdose and that the overdose caused Manuela's injuries.

### CONCLUSION

In summary, we conclude that the MLI-IA applied to this case and that the Ruizes were required to file an expert report. Since they failed to file a report, the trial court did not abuse its discretion in dismissing this claim. We affirm the judgment of the trial court.