Affirmed and Memorandum Opinion filed February 24, 2004









Affirmed and Memorandum Opinion filed February 24,
2004.

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-03-00168-CV

____________

 

SUE TULEY, Appellant

 

V.

 

TERESA ORTIZ DE
RUIZ, AS EXECUTRIX OF THE ESTATE OF DR. FRANCISCO AURELIO RUIZ-ORTIZ, DECEASED, Appellee

 



 

On Appeal from the 61st
District Court

Harris County, Texas

Trial Court Cause No. 94-15480

 



 

M E M O R A N D U M   O P I N I O N








In 1994, appellant Sue Tuley sued Dr.
Francisco Ruiz-Ortiz, various companies of the Dow Corning family, a Dow
employee, and the estate of a deceased Dow employee.[1]  Tuley alleged multiple causes of action,
including misrepresentation, breach of warranty, and failure to provide
informed consent, based on breast reconstruction surgery Ruiz-Ortiz performed
in 1980, during which he implanted silicone implants.  Following removal of Tuley=s actions against
the Dow defendants to federal court, Ruiz-Ortriz filed a no-evidence summary
judgment motion based on Tuley=s failure to
provide an expert report.  The trial
court granted the motion and ordered Tuley take nothing as against
Ruiz-Ortiz.  We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In May 1980, Ruiz-Ortiz performed a
lumpectomy and reconstructive surgery on Tuley. 
Before the surgery, Tuley requested saline implants and specifically
told Ruiz-Ortiz she did not want silicone implants.  Ruiz-Ortiz told Tuley she would be receiving
saline implants.[2]

In 1992, Tuley, accompanied by her
daughter, returned to Ruiz-Ortiz for a mammogram.  During the visit, Tuley questioned Ruiz-Ortiz
about the implants, and he reassured her they were saline.

In 1994, while Tuley was undergoing an MRI
for upper respiratory problems, she was informed the implants were silicone and
there was evidence at least one of them had ruptured.  She subsequently had the implants removed,
but the operation has left her chest scarred and disfigured.

Tuley sued Ruiz-Ortiz and several Dow
Corning entities.  Although Tuley alleged
multiple causes of action, including misrepresentation, and breach of warranty
against the Dow defendants and the ADefendants@ generally, her
specific claim against Ruiz-Ortiz was failure to provide informed consent.  After Tuley=s suit against the
Dow parties was removed to federal court, Ruiz-Ortiz filed a no-evidence
summary judgment motion.  He argued Tuley
was required to prove breach of the standard of care and proximate cause by
means of expert testimony, and despite adequate time for discovery, had not
provided any expert reports.








Tuley responded, attaching (1) medical
records, (2) a statement regarding the lack of any consent form, and (3) the
affidavits of Tuley, Tuley=s daughter, and
Tuley=s father.  She did not attach an expert medical
report.  In her response, Tuley alleged
Ruiz-Ortiz=s failure to disclose that he used
silicone implants, as opposed to saline, was clear evidence of a battery.[3]  She also argued failure to perform the
procedure to which the patient had consented was distinguishable from providing
inadequate information about the procedure actually performed.

The trial court granted the motion for
summary judgment.  Tuley then filed a
motion for new trial, for the first time invoking the Deceptive Trade Practices
Act (DTPA).  The motion was denied.

DISCUSSION

Introduction and Standard of Review

In a single issue, Tuley argues the trial
court erred in granting Ruiz-Ortiz=s no-evidence
motion for summary judgment.  She
contends an issue of material fact exists regarding what services Tuley agreed
to receive, and expert testimony is not required to establish the existence of
that issue.








The movant for summary judgment has the
burden to show there is no genuine issue of material fact and it is entitled to
judgment as a matter of law.  Nixon v.
Mr. Prop.  Mgmt. Co., 690 S.W.2d 546,
548 (Tex. 1985).  After sufficient time
for discovery has passed, a party may file a Ano evidence@ motion for
summary judgment if there is no evidence of one or more essential elements of a
claim or defense on which an adverse party would have the burden of proof at
trial.  See Tex. R. Civ. P. 166a(i).  In reviewing a Ano evidence@ summary judgment,
we review the evidence in the light most favorable to the nonmovant and
disregard all evidence and inferences to the contrary. Coastal Conduit &
Ditching, Inc. v. Noram Energy Corp., 29 S.W.3d 282, 284 (Tex. App.CHouston [14th
Dist.] 2000, no pet.). We sustain a no evidence summary judgment if (1) there
is a complete absence of proof of a vital fact; (2) rules of law or evidence
bar the court from giving weight to the only evidence offered to prove a vital
fact; (3) the evidence offered to prove a vital fact is no more than a
scintilla; or (4) the evidence conclusively establishes the opposite of a vital
fact.  Id.

Proof of Failure to Disclose as basis of
Medical Malpractice Claim

Section 6.01 of the former Medical
Liability and Insurance Improvement Act (MLIIA), which was in effect from the
time of the alleged non-disclosure through the filing of the lawsuit, provided:

In a suit against a physician or
health care provider involving a health care liability claim that is based on
the failure of the physician or health care provider to disclose or adequately
to disclose the risks and hazards involved in the medical care or surgical
procedure rendered by the physician or health care provider, the only
theory on which recovery may be obtained is that of negligence in failing to
disclose the risks or hazards that could have influenced a reasonable
person in making a decision to give or withhold consent.

 

Act of May 30, 1977, 65th Leg., R.S., ch. 817, sec.
6.02, 1977 Tex. Gen. Laws 2039, 2048 (emphasis added) (repealed and recodified
2003, current version at Tex. Civ. Prac.
& Rem. Code Ann. ' 74.101 (Vernon
Supp. 2004)).








In a medical malpractice case based on
negligence, the plaintiff must prove breach of duty and proximate cause by
medical testimony.   Wendenburg v.
Williams, 784 S.W.2d 705, 706 (Tex. App.CHouston [14th
Dist.] 1990, writ denied) (citing Bowles v. Bourdon, 148 Tex. 1, 219
S.W.2d 779, 782 (1949)).  If a plaintiff
cannot present expert testimony that a violation of the proper medical standard
proximately caused her injury, she has not presented legally sufficient evidence
to prove her cause of action.  Id.
(citing Hart v. Van Zandt, 399 S.W.2d 791, 792 (Tex. 1965)).

Nevertheless, Tuley argues negligence is
not the underlying nature of her suit; rather, her claims Aemanated from the
DTPA pre-amendment of 1995.@  In support Tuley cites Sorokolit v. Rhodes,
889 S.W.2d 239 (Tex. 1994).  In Sorokolit,  the supreme court was construing MLIIA
section 12.01(a), which provided:

Notwithstanding any other law, no
provisions of Sections 17.41B17.63, Business & Commerce Code, shall apply to
physicians or health care providers as defined in Section 1.03(3) of this Act,
with respect to claims for damages for personal injury or death resulting, or
alleged to have resulted, from negligence on the part of any physician or
health care provider.

 

Id. at 240 n. 1 (quoting Tex. Rev. Civ. Stat. Ann. art. 4590i, ' 12.01(a) (Vernon
Supp. 1994), repealed and recodified 2003, current version at Tex. Civ. Prac. & Rem. Code Ann. ' 74.004(a) (Vernon
Supp. 2004)).  The supreme court held
that the MLIIA, although precluding DTPA suits against physicians based on
negligence, did not prohibit DTPA suits based on breach of express warranty or
misrepresentation when a physician has guaranteed a particular result.   Id. at 243.








In Sorokolit, the plaintiff alleged
that Dr. Sorokolit told her to choose a photograph of a nude model from a
magazine and promised  he would make her
breasts look like those in the photo she selected. The results were not as
guaranteed, and Rhodes sued Sorokolit for medical malpractice, breach of
implied and express warranties, and knowing misrepresentation.  Id. at 240.[4]  Rhodes=s DTPA claims
included allegations Sorokolit had (1)  Arepresented . . .
his services had characteristics, uses and benefits which [they] did not have;@ (2) Arepresented . . .
his services were of a particular standard, quality and grade when they were
another;@ (3) Arepresented . . .
his warranty involved rights which he did not have or involve [sic];@ and (4) Abreached his
express and implied warranty to perform his services in a good and workmanlike
manner.@  Id. 

In reaching its holding, the supreme court
explained: 

Rhodes does not allege that Dr.
Sorokolit deviated from the accepted standard of care in performing the
surgery, nor is it evident that her DTPA suit for knowing misrepresentation and
breach of express warranty is merely the recharacterization of a negligence
suit.  Her claim is that Dr. Sorokolit
guaranteed the results of his surgery and that the doctor knowingly breached
his express warranty of a particular result and knowingly misrepresented his
skills and the results he could achieve. 
The DTPA defines Aknowingly@ as meaning Aactual awareness of the falsity,
deception, or unfairness of the act or practice giving rise to the consumer=s claim or . . . actual awareness
of the act or practice constituting the breach of warranty . . . .@ 
Tex. Bus. & Com. Code Ann.
' 17.45(9) (Vernon 1987.).  Neither DTPA claim involves negligenceCneither requires a determination of
whether a physician failed to meet the standard of medical care; each claim, by
its nature, concerns intentional deception and intentional breach of express
guarantees.  Accordingly, we hold that
section 12.01(a), which does preclude DTPA suits founded on a breach of the
accepted standard of medical care, does not preclude suits under the DTPA for
knowing misrepresentation or breach of express warranty in cases in which a
physician or health care provider warrants a particular result.

 

Id. at 242B43.








The allegations in Sorokolit
tracked the language of specific DTPA provisions.  See id. at 240 (quoting allegations); cf.
Tex. Bus. & Com. Code Ann. ' 17.46(b)(5), (7),
(20) (Vernon Supp. 2004) (defining A>false, misleading,
or deceptive acts or practices=@ under the
DTPA).  The Sorokolit allegations
therefore differ significantly from the allegations in the present case, with
Tuley levying any DTPA-type allegations of knowing misrepresentation or breach
of warranty only against the Dow corporations and Dow individuals.[5]  In Paragraph III of her second amended
petition, for example, Tuley provides the overview of her lawsuit:

This is a civil liability lawsuit
brought to recover a legal debt of money damages which are owing Plaintiffs as
a result of the Defendants= defective design, defective manufacture and marketing of
silicone covered breast implants, negligence and gross negligence, breach of
express and implied warranties, misrepresentations and fraud.  This action is initiated as to Dr. Francisco
Ruiz to recover due to a failure to provide informed consent.

 

Paragraph XII contains the first mention
of Ruiz-Ortiz after the initial allegation in Paragraph III.[6]  In Paragraph XII, Tuley sets forth, element
by element, her allegations delineating Ruiz-Ortiz=s breach of the
duty of informed consent.  She
specifically alleges the following breaches of his duty of care:  (1) failure Ato warn of or
disclose the materials[,] risks and consequences of auto-immune disease as a
result of the implantation of breast implants;@ (2) Acharacterizing the
risk of complications as non-existent;@ (3) failure Ato disclose that
the silicone could escape into the body causing injury and damages;@ (4) failure Ato disclose timely
that the silicone covered implants needed to be removed;@ and (5) failure Ato disclose that
silicone implants would be placed in the breast cavity of [Tuley] as opposed to
the saline implants consented to by [Tuley.]@  Tuley alleges the negligent non-disclosure
was a proximate cause of the damages previously set forth.  She refers to the lack of MLIIA guidelines
for disclosure of the reasonably known risks and consequences of silicone
breast implants and to the MLIIA notice provisions.








Given the preceding allegations, our
previous decision in Ruiz v. Walgreen Co. is instructive.  79 S.W.3d 235 
(Tex. App.CHouston [14th Dist.] 2002, no pet.).   In Ruiz, a Walgreen pharmacist
misfilled Manuela Ruiz=s prescription.  Id. at 237.  After she examined the medication at the
pharmacy, she told the pharmacist she thought he had made a mistake, but he
assured her he had not, explaining the drug looked different because it was a
generic substitute.  Id.  Later 
when she opened the prescription at home, she became concerned, and
telephoned the pharmacist.  Id.  He again explained the drug only appeared to
be the wrong medication and encouraged her to take it.  Id. 
Manuela became ill, and her physicians ultimately determined her
condition was caused by an overdose of the incorrectly filled prescription.  Id.

Manuela and her husband sued
Walgreen.  As described by this court,
the Ruizes alleged the following, in the alternative:

(1) Anegligent acts and omissions,@ i.e., the pharmacist failed
to read the prescription correctly and failed to verify the correct
prescription;  (2) Abreach of express and implied
warranties@; 
and (3) Abreach of contract.@  
The petition also alleged that these Anegligent acts and omissions@ caused Manuela to become seriously
ill and suffer Aextensive, debilitating and life
threatening injuries which severely diminished her enjoyment of life and her
life expectancy.@   Finally, the petition alleged that A[p]rior to the incident . . .  Ruiz wa snot [sic] suffering from any of the
symptoms that resulted from the incorrect filling of the prescription that was
also an overdose.@

 

Id.

The Ruizes did not file an expert report
as the MLIIA required, and the trial court dismissed their case with
prejudice.  Id.  On appeal, the Ruizes contended, in part,
their causes of action for breach of warranty and deceptive trade practices
were not governed by the MLIIA, but instead, by common law or the DTPA.  Id.








This court disagreed.  Although we recognized a party can maintain
causes of action for separate, independent torts committed by a medical
professional, we concluded the case at bar Ainvolve[d] no
separate fraudulent act and no separate tort. . . .  It derive[d] from the pharmacist=s alleged
negligent actions that were inextricably related to his professional duty of
dispensing medication. . . .@  Id. at 239.  In the course of reaching this conclusion, we
explicitly distinguished Sorokolit. 
Id.  We also observed:

We have reviewed [the Ruizes=] live petition and do not find
either [DTPA or breach of warranty causes] of action.  The petition does not allege what implied
warranties were made, much less what express warranties were made.  In fact, other than the mention of the word Awarranty@ in the paragraph of their pleading
in which they set out their causes of action, Awarranty@ appears nowhere in the petition,
nor is there any mention of a promise or guarantee.

Likewise, the DTPA is never
mentioned and there are no allegations that the pharmacist=s actions violated particular
sections of the DTPA, nor does the petition contain any language from the DTPA
(such as alleging that Walgreen represented that the goods or services had
characteristics, uses or benefits that they did not have).  See Tex.
Bus. & Com. Code Ann. '' 17.46,  17.50
(Vernon 1987 & Supp. 2002).  We find
no DTPA allegations, and find no claim other than a straightforward medical
malpractice claim.

 

Id. at 238.

As discussed above, Paragraph XII of Tuley=s petition, the AInformed Consent@ paragraph
specifically directed at Ruiz-Ortiz=s acts and
omissions, tracked the language of the MLIIA, not the DTPA.  In this paragraph, there are no allegations
of breach of warranty or misrepresentation, only allegations of breach of duty
proximately causing Tuley=s damages. 
Although Tuley=s entire petition goes beyond the bare use
of the word Awarranty@ in the Ruiz v.
Walgreen petition, the warranties and deceptions Tuley alleged are directed
to the initial manufacture and marketing by the Dow Defendants.  Her allegations of  intentional deception and fraudulent
representation refer to the Dow Defendants=
misrepresentations silicone covered implants were safe, their failure to inform
or release the results of research, and their representations adequate research
had been done.  Her allegations of breach
of express and implied warranties refer to warranties of  the safety and integrity of the silicone
filled implants, not warranties of a particular result, as in Sorokolit.








We conclude the analysis of Ruiz,
rather than Sorokolit, controls the present case.  We overrule Tuley=s sole issue.

We affirm the judgment of the trial court.

 

 

 

 

 

/s/      John S. Anderson

Justice

 

 

 

 

Judgment
rendered and Memorandum Opinion filed February 24, 2004.

Panel
consists of Justices Yates, Anderson, and Hudson.

 

 











[1]  Ruiz-Ortiz
subsequently died, and Tuley substituted appellee Teresa Ortiz De Ruiz,
executrix of the Ruiz-Ortiz=s estate. 
Because Tuley=s suit was originally against Dr. Ruiz-Ortiz, we use ARuiz-Ortiz@ in
referring both to the doctor and to the executrix of his estate.





[2]  Consistent with
the summary judgment standard of review, discussed below, we accept as
true  all evidence in favor of Tuley.





[3]  In her
response, Tuley specially excepted to Ruiz-Ortiz=s
failure Ato adequately segregate the grounds on which [he]
moves for summary judgment.  In
particular, [Ruiz-Ortiz] has failed to claim that there is no or insufficient
evidence with regard to the count of assault which is pled at paragraph III.A.@  The record
before this court, however, contains only an original petition, filed April 6,
1994, and a second amended petition, filed March 6, 1995, neither of which
contain an allegation of battery or a paragraph III.A.  On appeal, Tuley does not characterize any of
her claims as ones for battery.





[4]  Rhodes
subsequently dropped her negligence claims. 
Sorokolit v. Rhodes, 889 S.W.2d 239,  240 (Tex. 1994).





[5]  Indeed, in her
appellate brief, Tuley characterizes the issue of material fact and her
allegations against Ruiz-Ortiz as follows: AA
genuine issue of material fact exists regarding what services [Tuley] agreed
to, as she states that he promised harmless saline implants and he denies
it.  Dr. Ruiz breached the warranty
between him and his patient, and he knowingly misrepresented the truth of the
nature of her implants.@





[6]  The
intervening paragraphs contain allegations against ADow Defendants@ and ADefendants.@  In only three of those paragraphs do terms
related to misrepresentation or breach of warranty appear.  Although Tuley defined ADow Defendants,@ she did
not define ADefendants.@ Given
the various contexts in which ADefendants@ appears
in the petition, it difficult to determine whether she intended ADefendants@ to mean
(1) only the corporate defendants and their agents, (2) a shorthand term to
refer to only to ADow Defendants@ when
used in the same paragraph initially alleging a cause of action against ADow Defendants,@ or (3)
the Dow Defendants, their representatives, and Ruiz-Ortiz.