ACCEPTED
12-15-00189-CV
TWELFTH COURT OF APPEALS
TYLER, TEXAS
11/30/2015 8:54:48 PM
Pam Estes
CLERK

CAUSE NO. 12-15-00189-CV    ORAL ARGUMENT REQUESTED

FILED IN
12th COURT OF APPEALS
TYLER, TEXAS
11/30/2015 8:54:48 PM
PAM ESTES
Clerk

## IN THE
## COURT OF APPEALS FOR THE
## TWELFTH DISTRICT OF TEXAS SITTING IN TYLER, TEXAS

GARRISON NURSING HOME AND REHABILITATION CENTER AND GARRISON NURSING HOME, INC.,

APPELLANTS,

VS.

LEGATHA DEMINGS,

APPELLEE.

On Appeal from the 145th Judicial District Court
of Nacogdoches, Nacogdoches County, Texas

REPLY BRIEF OF APPELLANT GARRISON NURSING HOME AND REHABILITATION CENTERAND GARRISON NURSING HOME, INC.

KENT, ANDERSON, BUSH, FROST & METCALF, P.C.
DAVID W. FROST
1121 E.S.E. LOOP 323, SUITE 200
TYLER, TEXAS 75701
(903) 579-7507
(903) 581-3701 (FAX)

ATTORNEYS FOR APPELLANTS GARRISON NURSING HOME AND REHABILITATION CENTER AND GARRISON NURSING HOME, INC.

# TABLE OF CONTENTS

INDEX OF AUTHORITIES.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

REPLY ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

1.     Reply to Appellee's Statement of the Case. . . . . . . . . . . . . . . . . . . . . . . . 2

2.     Reply to Appellees Statement of the Facts. . . . . . . . . . . . . . . . . . . . . . . . 2

3.     Objection to Appendix A to Appellee's Brief. . . . . . . . . . . . . . . . . . . . . . 4

4.     Dr. Miller has not shown that he is qualified to provide causation opinions regarding the very matter at issue. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

5.     Dr. Miller's report is impermissibly conclusory regarding causation. . . 7

6.     Pauline Kaper, RN is not qualified to provide causation opinions. . . . 11

        A.     Dr. Miller has not incorporated or adopted any of the opinions of Pauline Kaper, RN. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

7.     The medication error report is not an expert report. . . . . . . . . . . . . . . 13

8.     *Res ipsa loquitur* does not excuse requirement of an expert report. . . . 14

PRAYER.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

CERTIFICATE OF COMPLIANCE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

# INDEX OF AUTHORITIES

**CASES**                                                                      **PAGE**

*Bogar v. Esparza*,
  257 S.W.3d 354 (Tex. App.–Austin 2008, no pet.). . . . . . . . . . . . . . . . . . . 14

*Broders v. Heise*,
  924 S.W.2d 148 (Tex. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

*Collini v. Pustejovsky*,
  280 S.W.3d 456 (Tex. App.–Fort Worth 2009, no pet.). . . . . . . . . . . . . .  7,

*Garcia v. Marichalar*,
  198 S.W.3d 250 (Tex. App.–San Antonio 2006, no pet.). . . . . . . . .  14, 15

*HEB Grocery Co. v. Galloway*,
  2014 WL 2152128 (Tex. App.–Beaumont May 22, 2014, no pet.). . . . . . 7

*Haddad v.* Marroquin,
  2007 WL 2429183 (Tex. App.–Edinburg Aug 29, 2007, no pet.). . . . . . 14

*Ibrahim v. Gilbride*, 2010 WL 5064430
  (Tex. App.–Houston [14th Dist.] December 9, 2010, no pet.). . . . . . . . . . 10

*Hector v. Christus Health Gulf Coast,* 175 S.W.3d 838
  (Tex. App.–Houston [14th Dist.] 2005, pet. denied). . . . . . . . . . . . . . 14, 15

*Jelinek v. Casas*,
  328 S.W.3d 526 (Tex. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9, 10

*Murphy v. Russell*,
  167 S.W.3d 835 (Tex. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Petty v. Churner*,
  310 S.W.3d 131 (Tex. App.–Dallas 2010, no pet.). . . . . . . . . . . . . . . . . . 13

*Ruiz v. Walgreen Co.,*
      79 S.W.3d 235 (Tex. App.–Houston [14th Dist.] 2002, no pet.). . . . . . . . 15

*Sherman v. HealthSouth Specialty Hosp. Inc.,*
      397 S.W.3d 869 (Tex. App.–Dallas 2013, pet. denied). . . . . . . . . . . . . . . 14

*Thomas v. Alford,*
      230 S.W.3d 83 (Tex. App.–Houston [14th Dist.] 2008, no pet.). . . . . . . . . 4

*Walgreen Co. v. Hieger,*
      243 S.W.3d 183 (Tex. App.–Houston [14th Dist.] 2007, pet. denied).13, 14

*Van Ness v. ETMC First Physicians,*
      461 S.W.3d 140 (Tex. 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

**STATUTES**                                               **PAGE**

TEX. CIV. PRAC. & REM. CODE §74.201.. . . . . . . . . . . . . . . . . . . . . . . . . . 23

TEX. CIV. PRAC. & REM. CODE §74.351.. . . . . . . . . . . . . . . . . . . . . . . . 15, 16

TEX. CIV. PRAC. & REM. CODE §74.351 (r)(5)(C). . . . . . . . . . . . . . . . . 11, 12, 13

TEX. CIV. PRAC. & REM. CODE §74.403(a). . . . . . . . . . . . . . . . . . . . . . 12, 13

**RULES**                                                  **PAGE**

TEX. R. APP. P. 38.1(d). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

TEX. R. APP. P. 38.1(g). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

IN THE
COURT OF APPEALS FOR THE
TWELFTH DISTRICT OF TEXAS SITTING IN TYLER, TEXAS

GARRISON NURSING HOME AND REHABILITATION CENTER
AND GARRISON NURSING HOME, INC.,

APPELLANT,

VS.

LEGATHA DEMINGS,

APPELLEE.

On Appeal from the 145th Judicial District Court
of Nacogdoches, Nacogdoches County, Texas

**REPLY BRIEF OF APPELLANTS GARRISON NURSING HOME AND
REHABILITATION CENTERAND GARRISON NURSING HOME, INC.**

**COMES NOW, GARRISON NURSING HOME AND
REHABILITATION CENTER AND GARRISON NURSING HOME, INC.,**
Appellants in the above-entitled and numbered cause and files the following
Appellants' Reply Brief asking the court of appeals to reverse the trial court's ruling

- 1 -

on its motion to dismiss and in support thereof would respectfully show the court the following:

## REPLY ARGUMENT

**1.      Reply to Appellee's Statement of the Case**

Appellants Garrison Nursing Home and Rehabilitation Center and Garrison Nursing Home, Inc.  (collectively "Garrison") disputes the factual allegations contained in Appellee's Statement of the Case and would show that Appellee's Statement of the case does not comply with Texas Rule of Appellate Procedure 38.1(d).  Pursuant to Rule 38.1(d) the Statement of the Case "should not discuss the facts."   Appellee has inserted in the Statement of the Case the claim that the Supplemental Report of Dr. Keith Miller and the report of Pauline Kaper, RN each expressly incorporate by reference the report of the other.  First, this should not be discussed in the Statement of the Case, and, second, the statement is not accurate.  In her report, Ms. Kaper does not even mention Dr. Miller's report and Dr. Miller only indicates that he reviewed Ms. Kaper's report. (CR 54) No where within Dr. Miller's report does he incorporate or adopt any portion of Ms. Kaper's report.

**2.      Reply to Appellee's Statement of the Facts**

Garrison disputes the factual allegations contained in Appellee's Statement of

Facts and would show that Appellee's Statement of Facts does not comply with Rule 38.1(g) of the Texas Rules of Appellate Procedure. Under Rule 38.1(g), a Statement of Facts should state pertinent facts concisely and without argument, and **must** be supported by record references. *See* Tex. R. App. P. 38.1(g)(emphasis added). Garrison disputes the first sentence of the Statement of Facts as it inappropriately contains argument regarding breaches of duty. Garrison disputes the second sentence wherein Appellee asserts that Ms. Demings previous ischemic cardiovascular accident was only "mild." This is not supported by Appellee's reference.

Garrison disputes the third sentence in Appellee's Statement of Facts as the assertions contained in that sentence are not supported by the reference provided by Appellee.

Garrison disputes the fourth sentence in the Statement of Facts as the assertions contained in that sentence are not supported by the references provided and is inappropriate argument.

Garrison disputes the sixth sentence in the Statement of Facts in which Appellee asserts Ms. Demings suffered a "severe" stroke as this is not supported by the references cited and it is inappropriate argument. Further, Garrison disputes the remainder of the sixth sentence on the grounds that the assertions are not supported

by the references cited.

Finally, with regard to the remainder of Appellee's Statement of Facts beginning in the seventh sentence with "[a]s a result . . .", wherein Appellee sets forth her allegations, Garrison disputes these allegations as Appellee has failed to include any references as required by Rule 38.1(g).

## 3. Objection to Appendix A to Appellee's Brief

Garrison objects to the inclusion of the document entitled "Medication Error Report" contained in Appendix A to Appellee's Brief. This document is not included in the appellate record, and, thus, should not be included as an appendix to Appellee's brief. Garrison requests the court to strike this filing and not consider it for any purpose.

## 4. Dr. Miller has not shown that he is qualified to provide causation opinions regarding the very matter at issue

To qualify as an expert on the causal relationship between a breach of the standard of care and the alleged injury or damage, "an expert must have knowledge, skill, experience, training, or education regarding the specific issue before the court that would qualify the expert to give an opinion on that particular subject." *Thomas v. Alford*, 230 S.W.3d 83, 87 (Tex. App.–Houston [14th Dist.] 2007, no pet.). The trial court "must ensure that those who purport to be experts truly have expertise

concerning the actual subject about which they are offering an opinion." *Broders v. Heise*, 924 S.W.2d 148, 152 (Tex. 1996).

In the present case, the relationship between an alleged stroke in Ms. Demings and the alleged failure to administer the medication Xarelto is the very matter at issue with regard to causation. Appellee has responded to Garrison's challenge of Dr. Miller's qualifications by pointing out that Dr. Miller repeatedly wrote in his report that he has experience diagnosing and treating patients with the same or similar conditions as Ms. Demings, and for illnesses related to strokes, hypertension and their complications. However, pertinent to the present case is whether Dr. Miller is qualified as to the relationship between an alleged stroke in Ms. Demings and the alleged failure to administer the medication Xarelto, and Dr. Miller fails to set forth his qualifications to provide an opinion on that specific subject.

Appellee asserts that "the prescription of a regime of blood thinner is clearly with [sic] the scope of Dr. Miller's practice as a physician that dealswith patients are stroke victims and patients that reside in nursing homes." Appellee's Brief p. 8-9. However, the problem with this assertion is that Dr. Miller himself did not write this in his report. Dr. Miller does not even assert that he prescribes blood thinners, much less Xarelto.

Further, Appellee writes that Dr. Miller's long recitation of his experience and qualifications in dealing with stroke victims and nursing home patients makes him qualified. Appellee's Brief, p. 11. However, "dealing with stroke victims" does not mean that Dr. Miller is qualified to opine on the relationship between an alleged stroke and the alleged failure to administer Xarelto. Numerous health care providers may work with stroke victims, however, that does not mean they are qualified to testify as to the cause of a stroke. A medical doctor is not automatically qualified as an expert in every medical issue merely because he has graduated from medical school or has achieved certification in a medical specialty. *Broders*, 924 S.W.2d at 152.

Appellee had the burden of establishing that Dr. Miller has the knowledge, skill, experience, training, or education regarding the opinion that failing to give Xarelto caused Ms. Demings to suffer a stroke. However, Dr. Miller has not even indicated that he has prescribed or administered Xarelto. Further, Dr. Miller has not provided any qualifications to support his assertion that the alleged stroke of Ms. Demings was caused by a condition that would have been prevented by Xarelto.

In order for Dr. Miller to be qualified on the issue of whether the alleged failure of Garrisons to administer Xarelto to Ms. Demings caused her to have a stroke, he

must provide information showing his familiarity with Xarelto, whether he has prescribed Xarelto, the conditions Xarelto is used to treat, his familiarity with what happens when Xarelto is not taken, and his training and experience with regard to diagnosing the causes of stroke and the pathology of strokes. *See Collini v. Pustejovsky*, 280 S.W.3d 456, 465 (Tex. App.–Fort Worth 2009, no pet.); *HEB Grocery Co. v. Galloway*, 2014 WL 2152128 (Tex. App.–Beaumont, May 22, 2014, no pet.). This information is completely missing in Dr. Miller's report.

Appellee has failed to show that Dr. Miller is qualified to provide causation opinions in this case regarding the alleged failure to administer Xarelto as being the cause of an alleged stroke suffered by Ms. Demings.

**5.     Dr. Miller's report is impermissibly conclusory regarding causation**

It is not permissible for an expert to simply opine that a breach of the applicable standards of care caused an alleged injury. *Jelinek v. Casas*, 328 S.W.3d 526, 539 (Tex. 2010). Rather, "the expert must go further and explain, to a reasonable degree, how and why the breach caused injury based on the facts presented." *Id*. In his report, Dr. Miller has failed to explain the basis for his opinion that the alleged breach of 20 different administrative rules by Garrison caused Ms. Demings to suffer a stroke, extensive hospitalization, rehabilitation and related

complications. (CR 65). Without explanation, Dr. Miller has simply opined that the breaches caused Ms. Demings to suffer a stroke.

Assuming for argument only that Dr. Miller's alleged violations of the standard of care by Garrison are referencing Appellee's allegation that Garrison failed to administer the medication Xarelto to Ms. Demings, Dr. Miller does not provide a sufficient basis for failing to administer Xarelto as a cause of the alleged stroke in Ms. Demings. Dr. Miller fails to provide any information on his experience with Xarelto. He fails to provide information regarding how Xarelto works. He does not provide any information regarding the type of strokes Xarelto is designed to address. Dr. Miller does not provide an explanation of Xarelto's effectiveness in women of Ms. Deming's age who suffer from the same or similar conditions. Dr. Miller does not provide any explanation of why Xarelto would have prevented the stroke Ms. Demings allegedly suffered. Dr. Miller simply provides the opinion that Xarelto would have prevented Ms. Demings' stroke.

The import of Dr. Miller's opinion is that Xarelto prevents all strokes. Clearly, that is not the case. Dr. Miller was required to explain with reasonable detail why an alleged failure to administer Xarelto caused Ms. Demings to allegedly suffer a stroke on June 8, 2012. He did not do so. Rather, he simply opined that the failure to

provide Xarelto caused the stroke. This is the very *ipse dixit* the Texas Supreme Court said was impermissible. *Jelinek*, 328 S.W.3d at 539.

On several occasions, Appellee has cited *Van Ness v. ETMC First Physicians*, 461 S.W.3d 140 (Tex. 2015) as a basis for this court upholding the trial court's decision in this case. However, *Van Ness* demonstrates the very information that is missing from Dr. Miller's report.

In *Van Ness*, the plaintiffs filed suit against the defendants related to the death of their two month old child from pertussis (whooping cough). *Id*. at 141. The trial court denied the defendants' motion to dismiss in which they contended that the plaintiffs' expert report was conclusory as to causation. *Id*. On appeal, this court reversed the trial court's decision. Thereafter, the *Van Ness* Court reversed the Tyler Court of Appeals decision and remanded it back to the trial court. *Id*.

In *Van Ness*, the essence of the complaint against the treating physician was that she did not institute any testing or treatment of the infant after having seen the child on several occasions for signs and symptoms which if addressed would have led to the diagnosis and treatment of pertussis. *Id*. at 142-143. The plaintiffs' expert provided the opinions that a stage existed at which the infant's pertussis could have been treated with antibiotics; if the defendant physician had given the infant

antibiotics prophylactically and ordered testing, the tests would have shown his pertussis was at a treatable stage; and the infant would have had a 51% chance of recovery if the physician had started the prophylactic antibiotics and continued antibiotics as indicated by results of the tests. *Id*. at 144.

In *Van Ness*, the specific disease from which the infant suffered was identified by the expert, and the expert described the effectiveness of treatment by antibiotics. In contrast, Dr. Miller does not identify any specifics about the stroke that Ms. Demings allegedly suffered and he does not provide sufficient information regarding why Xarelto would have prevented a stroke in Ms. Demings. *See e.g. Ibrahim v. Gilbride*, 2010 WL 5064430 (Tex. App.–Houston [14th Dist.], Dec. 9, 2010, no pet).

The Texas Supreme Court's decision in *Jelinek* is very instructive on the inadequacy of Dr. Miller's report. In *Jelinek*, the defendant hospital inadvertently failed to renew the antibiotics of the plaintiff following the plaintiff undergoing intra-abdominal surgery. 328 S.W.3d at 530. The plaintiff filed suit and produced an expert report in which the expert opined that the negligent failure to administer the antibiotics led to a prolonged hospital stay and increased pain and suffering by the plaintiff. *Id*. at 539. The defendants' challenge to the report on causation was denied by the trial court and affirmed by the appellate court. *Id*. at 531.

The *Jelinek* Court agreed that the expert's causation opinions were conclusory, and thus, insufficient. The Court noted that the expert report was nothing more than a "bare assertion" that the failure to provide antibiotics resulted in increased pain and suffering and a prolonged hospital stay, and offered no explanation of how the breach caused the injury. *Id*. at 540.

In the present case, Dr. Miller has provided nothing more than the bare assertion that the alleged failure to provide Xarelto was the cause of Ms. Demings allegedly suffering a stroke. Beyond this statement, Dr. Miller offers no explanation of how the alleged breach caused the alleged injury. Dr. Miller's report is therefore impermissibly conclusory on the element of causation.

**6**. **Pauline Kaper, RM is not qualified to provide causation opinions**

The trial court sustained Garrison's objections to Defendant's expert report from Pauline Kaper, RN because as a registered nurse she is not qualified to provide any opinions regarding the causal relationship between any alleged departures from the standard of care and the injury, harm or damages claimed by Plaintiff. Appellee did not appeal the trial court's ruling. However, Appellee continues to try and impermissibly use Ms. Kaper's report to bolster its arguments regarding causation.

Pursuant to §74.351(r)(5)(C), causation opinions in a health care liability claim

must be provided by a physician. Section 74.351 (r)(5)(C) reads as follows:

"Expert" means:

with respect to a person giving opinion testimony about the causal relationship between the injury, harm, or damages claimed and the alleged departure from the applicable standard of care in any health care liability claim, a physician who is otherwise qualified to render opinions on such causal relationship under the Texas Rules of Evidence.

See also Tex. Civ. Prac. & Rem. Code §74.403(a) (a person can qualify as an expert witness on causal relationship between alleged departure from accepted standards of care and the injury harm or damages only if the person is a physician.)

In the present case, Ms. Kaper is not a physician and is therefore not qualified to provide opinions on the causal relationship between any alleged departures from the standard of care and the injury, harm or damages claimed by Plaintiff.

## A. Dr. Miller has not incorporated or adopted any of the opinions of Pauline Kaper, RN

Despite Appellee's assertions in her Brief, in his report, Dr. Miller never incorporates or adopts any of the opinions of Ms. Kaper. Dr. Miller's only mention of Ms. Kaper's report is to list her report as part of the materials he had reviewed. CR 54. He never addresses any of her opinions regarding standard of care or causation. While a court can consider the reports of a nurse and a physician together for the purpose of satisfying the expert reports requirements, on the issue of causation, the

court is limited to reviewing the report of the physician for compliance with the causation requirements. *See Walgreen v. Hieger*, 243 S.W.3d 183, 186 n.2 (Tex. App.–Houston [14th Dist.] 2007, pet. denied).

**7.     Medication Error Report is not an expert report**

To the extent Appellee is attempting to use the medication error report referenced by Dr. Miller in his report to satisfy the expert report requirements for causation, the report does not meet the requirements of an expert report.

As previously discussed, an expert report on causation must be rendered by a physician. Tex. Civ. Prac. & Rem. Code Ann. §§74.351(r)(5)(C), 74.403(a).  The medication error report was not authored by a physician.  It was authored by a nurse. Further, the medication error report does not set forth that Ms. Deming's alleged stroke was caused by the alleged failure to administer Xarelto.  According to Dr. Miller, the medication error report indicates that Ms. Demings was at a higher risk of stroke.  At best, this is just a description of possible causation which does not constitute a good faith effort to comply with the expert report requirements on causation. *See Petty v. Churner*, 310  S.W.3d 131, 136 (Tex. App.–Dallas 2010, no pet.) (Adverse event reports did not meet causation requirements for chapter 74 report as not written by a physician and provided only a description of possible causation);

*see also Walgreen Co. v. Hieger*, 243 S.W.3d 183, 187 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) ("report states only that [patient's] symptoms are 'consistent with' the known side effects of the medication and thus expresses an opinion on a possibility, not an ultimate opinion on causation").

The medication error report does not satisfy Appellee's requirement for an expert report setting forth the causal relationship between the alleged breaches of the standard of care and the damages and injuries alleged by Appellee.

## 8.  Res Ipsa Loquitur does not excuse requirement of an expert report

The doctrine of *res ipsa loquitur* does not excuse Chapter 74's procedural requirement of production of an expert report. *See Sherman v. HealthSouth Specialty Hosp.* Inc., 397 S.W.3d 869, 875-876 (Tex. App.–Dallas 2013, pet. denied); *Haddad v. Marroquin*, 2007 WL 2429183 (Tex. App.–Edinburg, Aug. 29, 2007, pet. denied); *Bogar v. Esparza*, 257 S.W.3d 354, 369 (Tex. App.–2008, no pet.); *Garcia v. Marichalar*, 198 S.W.3d 250 (Tex. App.–San Antonio 2006, no pet.); *Hector v. Christus Health Gulf Coast,* 175 S.W.3d 832, 838-39 (Tex. App.–Houston [14th Dist.] 2005, pet. denied). *Res ipsa loquitur* is an evidentiary rule by which negligence may be inferred by a jury, it is not a cause of action separate and apart from negligence. *Garcia*, 198 S.W.3d at 255.

While Texas Civil Practice and Remedies Code section 74.201 allows under certain circumstances for the applicability of *res ipsa loquitur* in a health care liability claim at time of trial, the requirement for an expert report pursuant to section 74.351 establishes a threshold requirement which a claimant must meet to continue a lawsuit. *Garcia*, 198 S.W.3d at 950. In examining the issue of whether *res ipsa loquitur* eliminated the need for a statutory expert report, the *Hector* court quoted from the Texas Supreme Court wherein it drew a distinction between an expert report at the onset of litigation and the need for expert testimony at trial:

> It may be that once discovery is complete and the case is tried, there is no need for expert testimony.... But the Legislature envisioned that discovery and the ultimate determination of what issues are submitted to the factfinder should not go forward unless at least one expert has examined the case and opined as to the applicable standard of care, that it was breached, and that there is a causal relationship between the failure to meet the standard of care and the injury, harm, or damages claimed.

*See Hector*, 175 S.W.3d at 838 (quoting *Murphy v. Russell*, 167 S.W.3d 835, 838 (Tex. 2005)). The *Hector* court went on to hold that regardless of whether *res ipsa loquitur* would apply at time of trial, a claimant must meet the procedural requirement of an expert report at the commencement of litigation. *Id*. at 838 - 839.[1]

---

[1]Assuming for purposes of argument only that *res ipsa loquitur* would apply at time of trial, it is an evidentiary rule by which negligence may be inferred by a jury, and an expert report would still be required with regard to the causation element of a *res ipsa loquitur* claim. *Id*. at 839; *Ruiz v. Walgreen Co.*, 79 S.W.3d 235, 239 (Tex. App.—Houston [14th Dist.] 2002, no pet.). So even if applicable at trial, *res ipsa*

Appellee was required to produce a sufficient expert report and *res ipsa loquitur* does not excuse section 74.351's expert report requirements.

## CONCLUSION AND PRAYER

WHEREFORE, PREMISES CONSIDERED, GARRISON NURSING HOME AND REHABILITATION CENTER AND GARRISON NURSING HOME, INC., Appellants in the above referenced appeal, asks the court of appeals to reverse the trial court's denial of Appellant's motion to dismiss and render the judgment in favor of Appellants dismissing the Appellees case against them and for such other and further relief either at law or in equity to which Appellants may show just entitlement.

Respectfully submitted,

KENT, ANDERSON, BUSH,
FROST & METCALF, P.C.
Woodgate I
1121 E.S.E. Loop 323, Suite 200
Tyler, Texas 75701
(903) 581-5588
(903) 581-3701 (Fax)

By: /s/ David W. Frost
    David W. Frost
    State Bar No. 24002111
    dfrost@tyler.net

ATTORNEYS FOR APPELLANT

---

*loquitur* does not excuse the necessity of expert testimony on causation.

## CERTIFICATE OF COMPLIANCE

The undersigned certifies this brief complies with the typed-volume limitations of Texas Rule of Appellate Procedure 9. This brief contains 4,115 words and has been prepared in proportionately spaced typeface using Word Perfect X6 in 14 point Times New Roman font.

Dated: November 30, 2015

<u>/s/ David W. Frost</u>
David W. Frost

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was electronically transmitted to

the following counsel on this 30th day of November, 2015.

Mr. W. Stephen Shires
Law Office of Stephen Shires, PLLC
123 San Augustine Street
Center, Texas 75935
(936) 598-3031 - FAX

<u>/s/ David W. Frost</u>
David W. Frost