Opinion filed September 14, 2006

















 
 
  
 
 







 
 
  
 
 




Opinion filed September 14, 2006

 

 

 

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh Court of Appeals

                                                                   __________

 

                                                          No. 11-05-00298-CV 

 

                                                    __________

 

OAK PARK, INC., INDIVIDUALLY AND D/B/A DESERT 

SPRINGS MEDICAL CENTER, Appellant

 

                                                             V.

 

                                       JAMES
HARRISON, Appellee

 



 

                                         On
Appeal from the 238th District Court

 

                                                        Midland County, Texas

 

                                                 Trial
Court Cause No. CV44934

 



 

                                                                   O
P I N I O N








Oak Park, Inc., Individually and d/b/a Desert
Springs Medical Center brings this interlocutory appeal from an order denying
its motion to dismiss James Harrison=s
suit for failure to file an expert report under Section 74.351 of the Texas
Civil Practice and Remedies Code.  Tex. Civ. Prac. & Rem. Code Ann. ' 74.351 (Vernon Supp. 2006).  The sole issue on appeal is whether Harrison=s
claims against Desert Springs are health care liability claims under the Texas
Medical Liability and Insurance Improvement Act set forth in Tex. Civ. Prac. & Rem. Code Ann. ch.
74 (Vernon 2005 & Supp. 2006).  Because
we conclude that Harrison=s claims are health care liability
claims, we reverse and render.

                                                              Factual
Background

On October 7, 2004, Harrison
was admitted to Desert Springs for inpatient detoxification treatment for
addiction to prescription pain medications. 
The incident in question occurred that night.  In his petition, Harrison
alleged that, on October 7, 2004, at about 8:00 p.m., he asked a nurse if he
could go outside to smoke.  The nurse
instructed Harrison to wait in a common area
of Desert Springs until a counselor returned from a meeting.  Harrison
waited for the counselor by an exterior door in the common area.  Harrison
alleged that a female psychological patient was also in the common area and
that, when the counselor unlocked the door and started to come into the room,
the psychological patient attempted to escape. 
The staff at Desert Springs attempted to restrain the psychological
patient.  Harrison
alleged that a melee ensued in which he was slammed into the wall by three
nurses, a male counselor, and the psychological patient.  Harrison
alleged that he sustained serious bodily injuries as a result of the
incident.  He also alleged that a
stimulator, which had been implanted into his body for treatment relating to a
previous injury, was damaged in the incident.








Harrison pleaded
common law negligence and premises liability claims against Desert
Springs.  He alleged that Desert Springs=s negligence proximately caused the
incident in question and his resulting injuries and damages.  Specifically, Harrison alleged that Desert
Springs had been negligent in the following respects: (1) in failing to keep
such lookout as a person of ordinary prudence would have kept under the same or
similar circumstances; (2) in failing to timely or properly segregate the
psychological patient from him; (3) in failing to timely inspect the area in
the vicinity of him and the psychological patient; (4) in failing to warn him
of the psychological patient; and (5) in failing to provide security for
him.  Harrison
alleged that employees, agents, or representatives of Desert Springs committed
the above acts or omissions while in the course and scope of their employment
with Desert Springs.  As such, Harrison sought to impose liability against Desert
Springs under a respondeat superior theory. 
Harrison also alleged that Desert
Springs had reason to know that the psychological patient posed a danger to
other patients, that the psychological patient posed a safety hazard to other
patients, and that Desert Springs had actual or constructive notice of the
safety hazard but that it failed to remove the hazard.  Harrison
alleged that each of these acts and omissions constituted negligence and
proximately caused the incident in question and his resulting injuries and
damages.  Harrison
sought to recover various personal injury damages, including past and future
medical expenses, past and future physical impairment, past and future pain and
suffering, and past and future mental anguish. 
He did not seek to recover any property damages for the alleged damage
to the stimulator.

On June 17, 2005, Desert Springs filed a motion to
dismiss Harrison=s
claims with prejudice.  Desert Springs
sought dismissal on the ground that Harrison
had failed to serve an expert report as required by Section 74.351.[1]  In a response to the motion to dismiss, Harrison asserted that his claims were not health care
liability claims and that, therefore, the expert report requirements in Section
74.351 did not apply to his claims.  Harrison stated that he was not complaining about the
medical treatment provided to him. 
Rather, according to Harrison, Athe dispute is one of safety of
allowing a violent psychological patient to be in the same room as a patient
who is attempting detoxification.@


After a hearing on Desert Springs=s motion to dismiss, the trial court
concluded that Harrison=s
claims did not constitute a health care liability claim.  On September 27, 2005, the trial court
entered an order denying Desert Springs=s
motion to dismiss.  On October 14, 2005,
the Texas Supreme Court issued its decision in Diversicare Gen. Partner,
Inc. v. Rubio, 185 S.W.3d 842 (Tex.
2005).  Based on the Diversicare decision,
Desert Springs filed a motion for reconsideration of the trial court=s ruling on its motion to dismiss.  The trial court entered an order denying the
motion for reconsideration.








Desert Springs has filed this appeal from the
trial court=s order
denying its motion to dismiss as permitted by Tex.
Civ. Prac. & Rem. Code Ann. '
51.014(a)(9) (Vernon
Supp. 2006).[2]  An amicus curiae brief generally supporting
Harrison=s
position has been received from Federated Mutual Insurance Company, a workers= compensation insurance carrier that
has provided workers=
compensation benefits to Harrison.  

                                                                  Issue
on Appeal

In a sole appellate issue, Desert Springs argues
that the trial court erred in denying its motion to dismiss because Harrison=s
claims constituted health care liability claims.

Standard of Review

Ordinarily, we review a trial court=s denial of a motion to dismiss filed
under Section 74.351 under an abuse of discretion standard.  Kendrick v. Garcia, 171 S.W.3d 698,
702-03 (Tex. App. CEastland
2005, pet. filed); In re Watumull, 127 S.W.3d 351, 354 (Tex. App.CDallas 2004, orig. proceeding).  However, when the issue, as in this case,
involves the applicability of Chapter 74 to the plaintiff=s claims and requires an interpretation
of the statute, we apply a de novo standard of review.  Buck v. Blum, 130 S.W.3d 285, 290
(Tex. App.CHouston
[14th Dist.] 2004, no pet.); Ponce v. El Paso Healthcare Sys., Ltd., 55
S.W.3d 34, 36 (Tex.
App.CEl Paso
2001, pet. denied).[3]

                                                       Health
Care Liability Claims

The expert report requirements set forth in
Section 74.351 apply to health care liability claims.  In a health care liability claim, the
claimant must serve an expert report on each party or the party=s counsel not later than the 120th day
after the date the original petition is filed. 
See Section 74.351(a). 
Section 74.001(a)(13) defines Ahealth
care liability claim@
as follows:

AHealth
care liability claim@
means a cause of action against a health care provider or physician for
treatment, lack of treatment, or other claimed departure from accepted
standards of medical care, or health care, or safety or professional or
administrative services directly related to health care, which proximately
results in injury to or death of a claimant, whether the claimant=s claim or cause of action sounds in
tort or contract.

     








The sole dispute in this case is whether Harrison=s claims are health care liability
claims as defined in Section 74.001(a)(13). 
Desert Springs argues that all of Harrison=s claims are, in substance, health care
liability claims under the above definition. 
Harrison argues that his claims are
common law negligence and premises liability claims that do not fall within the
definition of health care liability claims.

A plaintiff cannot use artful pleadings to avoid
the requirements of Chapter 74 when the essence of the suit is a health care
liability claim.  Garland Comty. Hosp. v. Rose,
156 S.W.3d 541, 543 (Tex.
2004).  To determine whether a cause of
action is a health care liability claim, we examine the underlying nature of
the claim and are not bound by the form of the pleading.  Diversicare, 185 S.W.3d at 847; Sorokolit
v. Rhodes, 889 S.W.2d 239, 242 (Tex.
1994).  A cause of action is a health
care liability claim if it is based on a claimed departure from an accepted
standard of medical care, health care, or safety of the patient.  Diversicare, 185 S.W.3d at 848.  A cause of action alleges a departure from
accepted standards of medical care or health care if the act or omission
complained of is an inseparable part of the rendition of medical services.  Id.  The necessity of expert testimony from a
medical or health care professional to prove a claim may also be an important
factor in determining whether a cause of action is an inseparable part of the
rendition of medical care or health care services.  Id.  A cause of action alleges a departure from
accepted standards of safety if the acts or omissions complained of necessarily
implicate the accepted standards of safety applicable to the health care
provider.  Id. at 855.  Safety is defined as being Auntouched by danger; not exposed to
danger; secure from danger, harm or loss.@  Id.
(quoting Black=s Law Dictionary 1336 (6th ed.
1990)).  Professional supervision,
monitoring, and protection of the patient population at a health care facility
necessarily implicate the accepted standards of safety.  Id.








Diversicare involved claims that
Rubio, a nursing home resident, had been sexually assaulted by another resident
of the nursing home.  Rubio=s daughter brought suit on Rubio=s behalf against Diversicare, the owner
of the nursing home.  185 S.W.3d at
845.  In the petition, Rubio alleged that
multiple incidents of sexual assault had occurred over a six-month period as a
result of Diversicare=s
failure to adequately supervise and monitor Rubio to protect her from sexual
abuse and assault from the other resident. 
Id.  Rubio asserted negligence and breach of
contract claims in her petition.  Id.  

            The
issue before the supreme court in Diversicare was whether Rubio=s claims were health care liability
claims as defined in Section 74.001(a)(13). 
In analyzing the issue, the supreme court examined the nature of health
care services provided by nursing homes. 
Id.
at 849-50.  The supreme court stated that
A[t]he level and types of health care
services provided vary with the needs and capabilities, both physical and
mental, of the patients.@  Id.
at 850.  A consideration of various
medical issues determines the level and types of health care given to the
individual patients and to the patient population as a whole.  The supreme court explained:    

Some
patients need psychological treatment, while others require none.  Some patients require enhanced supervision
and additional staff or physical restraints to protect them from injuring
themselves and others or to protect them from other patients, while other
patients do not require such protections. 
The nature and intensity of care and treatment, including professional
supervision, monitoring, assessment, quantities and types of medication, and
other medical treatments are judgments made by professionals trained and
experienced in treating and caring for patients and the patient populations in
their health care facilities.   

 

Id.  Given the professional medical judgments
involved in providing health care to the patients, the supreme court concluded
that A[t]he
supervision and monitoring of Rubio and other nursing home residents and nursing
services provided to Rubio by Diversicare=s
staff were part of her health care.@  Id.  Thus, Rubio=s
claims that Diversicare failed to adequately monitor and supervise her to
protect her from the other resident alleged a departure from accepted standards
of medical care or health care.   Because
the supervision of Rubio and the resident who assaulted her and the protection
of Rubio were inseparable from the health care and nursing services provided to
Rubio, the supreme court held that Rubio=s
claims were health care liability claims. 
Id.
at 849.  

In Diversicare, the supreme court explained
that A[p]rofessional
supervision, monitoring, and protection of the patient population necessarily
implicate the accepted standards of safety under [Chapter 74].@ 
Id.
at 855.  Therefore, Rubio=s claims also alleged a departure from
accepted standards of safety applicable to the nursing home.  Because the supervision of Rubio and the
resident who assaulted her were inseparable from the accepted standards of safety
applicable to the nursing home, the supreme court held that Rubio=s claims were health care liability
claims under the safety element of Section 74.001(a)(13).  Id.
at 855.    








            Harrison=s claims are similar to the claims in Diversicare.  The essence of Harrison=s claim is that, although Desert
Springs knew that the psychological patient posed a danger to him and other patients,
Desert Springs did not protect him C
either by warning, segregation, or security C
from the psychological patient.  In the
trial court, Harrison characterized the
essence of his claim as follows: A[T]he
dispute is one of safety of allowing a violent psychological patient to be in
the same room as a patient who is attempting detoxification.@ 
Thus, the act or omission complained of was Desert Springs=s failure to protect Harrison
from the psychological patient.

            Whether to allow a psychological patient to be in the same
room as a detoxification patient raises the medical issues presented in Diversicare.  Similar to Diversicare, a
consideration of various issues determines the level and types of treatment
given to the individual patients at Desert Springs and to the patient
population as a whole.  Some patients may
need enhanced supervision or physical restraints to prevent them from injuring
others, while other patients do not require such measures.  Some patients may need to be segregated from
the remainder of the patient population to prevent them from harming
others.  Desert Springs must decide these
issues on a patient-by-patient basis, taking into account the needs of the
individual patients and the patient population as a whole.  The level and types of health care given
including professional supervision, monitoring, and protection of Harrison and
the other patients are Ajudgments
made by professionals trained and experienced in treating and caring for
patients and patient populations.@  See Diversicare, 185 S.W.3d at
850.  

Under Diversicare, the supervision of
Harrison and the psychological patient and the protection of Harrison are
inseparable from the health care services provided by Desert Springs to Harrison.  Id. at 849.  Harrison=s
claims allege a departure from accepted standards of medical or health care
because the act or omission complained of C
the failure to protect Harrison from the
psychological patient C
is inseparable from the health care services provided to him.  Additionally, the professional supervision,
monitoring, and protection of Harrison and the patient population at Desert
Springs are inseparable from the accepted standards of safety applicable to
Desert Springs.  Id. at 855.  Thus, Harrison=s claims also allege a departure from
accepted standards of safety applicable to Desert Springs.  For both of these reasons, Harrison=s claims are health care liability
claims under Chapter 74.  Because
Harrison=s claims
are health care liability claims, Harrison was
required to serve an expert report under Section 74.351.








Diversicare also establishes that expert
testimony from a medical or health care professional is necessary to prove Harrison=s
claims.  Harrison
alleged that Desert Springs was negligent in failing to timely or properly
segregate the psychological patient from him. 
The determination of issues relating to protection of a patient
population including whether or not to segregate a psychological patient from
the remainder of the patient population are matters of professional medical
judgment.  Diversicare, 185 S.W.3d
at 850.  The standards of care for
protection of patients at a health care facility are not matters within the
common knowledge of the general public.  See
id. at 851 (AThe
general public is not trained to evaluate whether a potential attacker admitted
to a health care facility should be physically or chemically restrained.@). 
Therefore, testimony from an expert in a health care field is required
to prove applicable standards of care and alleged breaches of those standards
of care.  Id. at 851.  The necessity of expert testimony from a
medical or health care professional to prove Harrison=s
claims supports the conclusion that Harrison=s claims are health care liability
claims.  Id. at 848.

In the trial court, Harrison
relied heavily on Bush v. Green Oaks Operator, Inc., 39 S.W.3d 669 (Tex.
App.CDallas
2001, no pet.).  In Bush, a
psychiatric inpatient sued the hospital after she was attacked by a fellow
patient.  She alleged that the hospital
knew of the fellow patient=s
propensity for violence and wrongfully failed to place the fellow patient in a
segregated unit.  She also alleged that
the hospital had been negligent in failing to warn her of the fellow patient=s propensity for violence and in
failing to maintain the premises in a safe manner.  Id.
at 671.  In Bush, the Dallas court held that
the plaintiff=s claims
were not health care liability claims.  Id. at 673.  The court stated that the breach alleged by
the plaintiff had not occurred as part of the rendition of medical services to
her.  Id.  At the hearing on Desert Springs=s motion to dismiss, Harrison=s counsel stated that Athe governing case right now is the Bush
case, and that is the one case that is most clearly analogous to our situation.@ 
In Diversicare, the supreme court expressly disapproved of the Bush
decision to the extent it had held that the plaintiff=s
claim against the hospital for the assault by the fellow patient was not a
health care liability claim.  Diversicare,
185 S.W.3d at 853.  Thus, Bush
provides no support for Harrison=s position.








On appeal, Harrison
argues that this case may present a Ahybrid
scenario@ in which
some of his claims are health care liability claims under Chapter 74 and some
of his claims are not health care liability claims.  Federated makes a similar argument in its
amicus curiae brief.  In his petition, Harrison alleged that the employees, agents, and
representatives of Desert Springs were negligent A[i]n
failing to keep such lookout as a person of ordinary prudence would have kept
under the same or similar circumstances.@  Based on this alleged negligent conduct of
the employees, Harrison sought to impose
liability against Desert Springs under a vicarious liability theory.  Harrison
contends that this vicarious liability theory is not a health care liability
claim because he is not complaining about medical care with respect to this
claim.  In his brief, Harrison asserts Athat the portion of the case where Harrison was slammed into the wall twice is not governed
by a medical standard of care.@  Instead, Harrison
argues that his vicarious liability theory is governed by Aa common law duty [on the part of
Desert Springs=s employees]
to avoid wrestling with a patient in the presence of another patient.@ Harrison
contends Athat [he]
should have been separated from the scrum at the start of the melee, or at
least before the second encounter with the wall.@  Likewise, Federated contends that Harrison=s
vicarious liability claim does not Aimplicate
Desert Springs=s
judgment with respect to the formation of policy involving the handling or
restraint of patients [or] criticize any health care related judgment.@

Harrison cannot
recast his health care liability claims as general negligence or premises
liability claims in order to avoid Chapter 74=s
statutory requirements.  Sorokolit,
889 S.W.2d at 242.  No matter how Harrison characterizes his vicarious liability claim, the
claim is predicated on Desert Springs=s
failure to protect him from the psychological patient.  Harrison=s claim arises from being in close
proximity to the psychological patient. 
Had Desert Springs not permitted the psychological patient to be in the
common area, the incident would not have occurred.  As explained above, the decision to allow a
psychological patient to be in a common area, as opposed to segregating the
psychological patient from other patients, requires the exercise of
professional judgment.  Although Harrison characterizes his claim as being based on
ordinary negligence of Desert Springs=s
employees, the underlying nature of his claim is that Desert Springs allowed
the psychological patient to be in the same room with him and that, therefore,
Desert Springs failed to protect him from the psychological patient.  As such, Harrison=s vicarious liability claim is a health
care liability claim under Chapter 74.  See
Diversicare, 185 S.W.3d at 849-50.








Federated argues that Diversicare is
distinguishable from this case because Diversicare involved a facility=s failure to prevent an injury caused
by another patient and this case involves an injury caused by employees of
Desert Springs.  Federated asserts that,
while Aprofessional
judgment relating to the provision of health care is arguably implicated@ in cases involving the failure to
prevent an injury caused by another patient, Athe
duty has been properly cast pursuant to traditional common-law standards@ in cases involving injury caused by
the employee of a health care facility. Harrison
did not allege that an employee of Desert Springs assaulted him.  Rather, he alleged that he was injured when
Desert Springs=s
employees attempted to restrain the psychological patient.  The principles applied by the supreme court
in Diversicare apply equally to the facts in this case.  Diversicare establishes that Harrison=s claims are health care liability
claims C whether
he claims that the psychological patient injured him or Desert Springs=s employees injured him C because the supervision of Harrison
and the psychological patient and the protection of Harrison
are inseparable from the health care services provided by Desert Springs to
him.  See Diversicare, 185 S.W.3d
at 849.

Harrison alleged
that, in the incident, he sustained damage to a stimulator that had been
implanted into his body for treatment of previous injuries.  Federated argues that Harrison=s allegations constituted a claim for
property damages to the stimulator and that Chapter 74 does not apply to
property damage claims.  However,
although Harrison alleged that the stimulator
was damaged in the incident, he did not seek any recovery of property
damages.  Instead, he requested only the
recovery of personal injury damages. 
Because Harrison did not allege a
property damage claim, we need not determine whether Chapter 74 applies to
property damage claims.  

                                                   This Court=s Ruling

Harrison=s claims are health care liability
claims.  Because Harrison
failed to serve an expert report as required by Section 74.351, the trial court
erred in denying Desert Springs=s
motion to dismiss.  We, therefore,
sustain Desert Springs=s
appellate issue.  We reverse the
trial court=s order
denying Desert Springs=s
motion to dismiss and render judgment dismissing Harrison=s claims with prejudice.           

 

TERRY McCALL

JUSTICE    
         

 

September 14, 2006

Panel
consists of:  Wright, C.J., and

McCall,
J., and Strange, J.

 











[1]Desert Springs also sought to
recover reasonable attorney=s fees and costs of court under Section 74.351(b)(1).  Desert Springs waived its request for
attorney=s fees and costs at the hearing on
the motion to dismiss.     





[2]Harrison asserts in his brief that this court lacks
jurisdiction in this case because there is not a final, appealable
judgment.  However, Section 51.014(a)(9)
provides,  AA person
may appeal from an interlocutory order of a district court . . . that . . . denies
all or part of the relief sought by a motion under Section 74.351(b).@  Therefore, this
court has jurisdiction in this case under Section 51.014(a)(9).





[3]Harrison urges us to apply traditional and no-evidence summary
judgment standards of review.  Summary
judgment standards of review do not apply to trial court=s rulings on motions to dismiss under Section
74.351.  Rather, the above cases set
forth the well-established standards of review applicable in such cases.