IN THE SUPREME COURT OF TEXAS








IN THE SUPREME COURT OF TEXAS
 
════════════
No. 07-0783
════════════
 
 
Irving W. Marks, 
Petitioner,
 
v.
 
St. Luke’s Episcopal Hospital, 
Respondent
 
════════════════════════════════════════════════════
On Petition for Review from the
Court of Appeals for the First District of 
Texas
════════════════════════════════════════════════════
 
 
Argued September 
11, 2008
 
            
Justice 
Wainwright, dissenting.
 
            
I join Justice Johnson’s dissent for the reasons he cogently explains. I 
write to explain further my differences with the Court’s opinion and to lament 
the Court’s reversal of several precedents that precluded artful pleading of 
claims to circumvent legislative requirements to pursue medical malpractice 
cases.
            
Under article 4590i, section 1.03(a)(4) of the 
Medical Liability and Insurance Improvement Act (MLIIA),1 there are three types of health care 
liability claims: claims arising from failure to satisfy the standards of care 
for medical care, for health care, or for safety. Tex. Rev. Civ. Stat. art. 4590i, 
§ 1.03(a)(4) (defining “health care liability claim” as an action against a 
physician or other health care provider for a “claimed departure from accepted 
standards of medical care or health care or safety which proximately results in 
injury to or death of the patient”). In Diversicare General Partner, Inc. v. Rubio, we 
held that an assault at a nursing home by a patient with reduced mental 
faculties on another mentally challenged patient was a health care claim. 185 S.W.3d 842, 849 (Tex. 2005). Citing statutory health care 
duties of nursing homes, we explained that nursing home residents were patients 
at those facilities not merely for shelter, as apartment residents, but also for 
health care and treatment. Id. at 850–51. We 
also concluded that the inclusion in 4590i of claims based on failure to provide 
adequate “safety” broadened the scope of the statute beyond medical and health 
care and, therefore, was another basis for concluding that the assault between 
patients was a health care liability claim. Id. at 
855. It was not necessary in Diversicare 
to precisely define the scope of the “safety” component of a health care 
liability claim, and we did not.
            
The Court’s opinion and the concurrence misconstrue Diversicare. The bulk of Diversicare construes “health care” under 4590i. 
Responding to the dissent and concurrence, the opinion in Diversicare noted that an injury to a patient 
resulting from a rickety staircase or an unlocked window does not implicate the 
“health care” prong of health care liability claims. Id. at 854. In this case, the Court and the 
concurrence erroneously cite those examples as exceptions to the scope of 
4590i’s “safety” prong in Diversicare. Diversicare’s only holding concerning the “safety” 
prong was that its inclusion expanded the reach of the statute and that it was 
broad enough to include Rubio’s claim in that case. Id. 
at 855.
            
Different from Diversicare, this case 
concerns the circumstances that bring a hospital equipment failure within the 
scope of article 4590i. Marks underwent surgery at St. Luke’s Hospital to 
implant a lumbar morphine pump catheter into his spinal cord to alleviate back 
problems. His medical records indicated that St. Luke’s Hospital implemented 
extra safety and fall precautions due to his risk of falling, his limited 
mobility, his need for an ambulatory assistance device, and his morphine 
therapy. The hospital’s instructions included that his hospital bed was to be 
“in a low position with the brakes applied,” and a fall precaution sticker was 
placed on the outside door of his room and on his medical chart. The health care 
providers concluded that Marks required certain prescribed precautions to 
address his risk of falling as part of his post-surgical care. The Court ignores 
these and other medical judgments and concludes that the fall was a matter of 
ordinary negligence disconnected from his hospital treatment.
            
The Court’s conclusion ignores the physician’s expert report that Marks 
himself provided in connection with his claim for 
medical malpractice. See Tex. 
Rev. Civ. Stat. 
art. 4590i, § 13.01(d) (requiring 
the substantiation of health care liability claims with a timely served expert 
report). Marks’s expert opined that the “accepted standard of care for 
nursing and hospital practice is to provide the patient with reasonably safe 
medical equipment, including a hospital bed for in-patients” and to “implement 
interventions to eliminate and reduce the patient’s risk of falling.” The 
physician concluded that the hospital violated “accepted standards of good 
nursing care” by failing to provide Marks with a safe hospital bed and, 
specifically, by failing “to ensure that the footboard was properly secured to 
the bed.” Marks’s own expert determined that, “to a reasonable degree of medical 
probability,” breach of these nursing standards of care was the proximate cause 
of Marks’s fall from the hospital bed. Whether these conclusions are supported 
by sufficient evidence will be questions for the jury, but they unquestionably 
establish that Marks pled a health care liability claim and, at least in the 
amended pleadings, he acknowledged that.
            
The Court initially asks the right question—whether medical judgment was 
employed in the equipment’s use and its importance to the patient’s care. But 
the Court then inexplicably analyzes whether medical or professional judgment 
was involved in “the assembly of Marks’s hospital bed.” __ 
S.W.3d __. It is difficult to understand how the necessity of medical 
judgment in the assembly of equipment determines whether that equipment’s use 
meets accepted standards of safety in the definition of a health care liability 
claim.2 Under this approach for construing 4590i, 
a hospital’s exoneration from or liability for a defective hospital bed would 
depend on whether assembly of the bed required the input of a medical 
professional.3 Likewise, a claim for injuries caused by 
the improper operation of a surgical drill due to the failure to tighten the 
drill bit would give rise to a health care liability claim if knowledge 
of a physician is required to assemble the drill. The Court’s reasoning also 
suggests, for example, that if a defective MRI scanner used to perform a 
magnetic resonance imaging scan causes injury to a person, the circumstance 
would not give rise to liability under 4590i unless medical judgment was 
required to assemble the scanner.
            
If the hospital equipment is used in patient care and treatment, its 
operation at least implicates medical care and health care. But the Court fails 
to answer these questions and instead discusses whether the assembly of 
the hospital equipment was the responsibility of the hospital’s maintenance 
staff or its medical staff. Concluding that the assembly of the equipment was 
the responsibility of maintenance staff, the Court, therefore, explains that the 
hospital bed was “unrelated to any professional judgment and is merely 
incidental to the patient’s care.” ___ S.W.3d ___. 
Would the Court also conclude that tightening a drill bit on a surgical drill 
was the responsibility of maintenance staff and therefore a patient’s injury 
arising from negligent assembly of the drill or its use during surgery would not 
be a health care liability claim?
            
I further wonder if anyone else would agree that the type of bed in which 
we recuperate from back surgery is merely “incidental” to our care. If that were 
true, neither a sleeping bag on the floor nor a wooden board elevated on wheels 
would violate 4590i’s treatment standards for a patient who had undergone back 
surgery. Under the Court’s characterization of the hospital bed’s role in 
Marks’s care, the instructions in his medical records for specific settings for 
his bed to recuperate after the surgery are superfluous. And the Court has 
apparently decided, contrary to the trial court and with no controverting evidence, that the opinions of Marks’s 
physician expert are wrong.
            
I am also concerned that the Court reverses several precedents. The Court 
holds that three of the four negligence claims against St. Luke’s Hospital are 
health care liability claims. Those three claims are for 1) failure to train and 
supervise the nursing staff properly, 2) failure to provide Marks with the 
assistance he required for daily living activities, and 3) failing to provide 
him with a safe environment in which to recover. The Court decides that the 
fourth claim as pled\ by Marks—providing a hospital bed that had been 
negligently assembled and maintained by the hospital’s employees—was not a 
health care liability claim. Yet, all four claims arose from the same facts 
involving the hospital bed provided to Marks as part of recuperation from back 
surgery. The Court cites Diversicare for its 
conclusion that the first three claims are health care liability claims, but 
then fails to follow Diversicare and other 
precedents prohibiting claim-splitting to avoid the statutory limitations on 
medical malpractice suits.
            
This Court has repeatedly held that parties may not employ artful 
pleading to circumvent the requirements for filing a health care liability 
claim—e.g., shorter statute of limitations than other negligence claims, 
heightened filing requirements (providing expert reports within 120 days of 
filing the lawsuit), and caps on damages. Diversicare, 185 S.W.3d at 
846–49. Negligence claims that are not health care liability claims are 
not subject to these requirements. To preclude creative recasting of health care 
liability claims as ordinary negligence claims to circumvent the statutory 
requirements, we have held that the underlying nature of the claim governs its 
categorization and not how the petition is worded. E.g., Sorokolit v. Rhodes, 
889 S.W.2d 239, 242 (Tex. 1994). In Diversicare, we reaffirmed the well established rule 
that “artful pleading and recasting of claims is not permitted” and 
warned that allowing claim-splitting in the pleadings to recast health care 
liability claims as something else “would open the door to splicing health care 
liability claims into a multitude of other causes of action with standards of 
care, damages, and procedures contrary to the Legislature’s explicit 
requirements.” Id. at 854. In Murphy v. 
Russell, we reaffirmed that a “claimant cannot escape the Legislature’s 
statutory scheme by artful pleading.” 167 S.W.3d 835, 838 
(Tex. 2005). In MacGregor Medical 
Ass’n v. Campbell, we prohibited a claimant from 
bringing a health care liability claim veiled as a violation of the Deceptive 
Trade Practices Act, repeating that claimants may not thwart the express 
legislative intent of the MLIIA by recasting health care claims as DTPA claims 
to avoid the standards set forth in the MLIIA. 985 S.W.2d 38, 
39–40 (Tex. 1998). And fifteen years ago we established in Sorokolit v. Rhodes that “[c]laims that a physician or health care provider was negligent 
may not be recast . . . to avoid the 
standards set forth in the Medical Liability and Insurance Improvement Act.” 
889 S.W.2d at 242.
            
The Court reverses these precedents and takes the position that three of 
Marks’s claims assert health care liability claims and one does not, even though 
all the claims are of the same underlying nature. The Court allows a claimant to 
pursue both health care liability claims and non-health care liability claims 
based on the same facts involving a health care provider. Marks’s claim for 
ordinary negligence in the alleged defective assembly of the hospital bed 
mirrors the health care liability claim. I would adhere to our precedents and 
again preclude artful pleading to circumvent the Legislature’s objectives under 
article 4590i. Because the Court does not, I respectfully dissent.
 
______________________________
Dale Wainwright
Justice
 
OPINION DELIVERED: August 
28, 2009






[1] 
In 2003, article 4590i was repealed, amended, and 
recodified in Chapter 74 of the Civil Practice and 
Remedies Code, which applies to health care liability claims filed on or after 
September 1, 2003. See Act of May 30, 1977, 65th Leg., R.S., ch. 817, 1977 Tex. Gen. Laws 2039, 2041, repealed by 
Act of June 2, 2003, 78th Leg., R.S., ch. 204, 
§ 10.09, 2003 Tex. Gen. Laws 847, 884 (current version at Tex. Civ. Prac. & Rem. 
Code§§ 
74.301–.303).

[2] 
This assumes the Court is correct that, to be a 
valid claim for inadequate “safety” under article 4590i, the claim must be an 
inseparable or integral part of the patient’s care or treatment. See ___ 
S.W.3d ___.

[3] 
Marks based his negligence claim on the improper 
assembly or maintenance of the hospital bed. However, that does not mean that 
the determination of whether the claim is a health care claim should turn on 
whether the assembly of the bed required medical know-how or judgment. By 
focusing on the assembly rather than the use of the bed, Marks has directed the 
Court away from the evidence demonstrating the bed’s medical purpose and use. 
The Court has taken the bait, despite our repeated warnings in several cases not 
to fall for artful pleading. See ___ S.W.3d ___.